# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

BOSTON SAFE DEPOSIT AND TRUST COMPANY *vs.* COMMIS-
SIONER OF CORPORATIONS AND TAXATION.

Suffolk.   November 14, 1927. — January 4, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Tax,* On income: proceeds of corporate liquidation.   *Constitutional Law,*
Taxation.   *Capital and Income.   Words,* "Capital," "Income."

Under the provisions of G. L. c. 62, § 1, subsection (b) as it appears in the
amended form in St. 1923, c. 487, § 3, and subsection (g), accumulated
profits of a corporation, when declared in way of a dividend to stock-
holders in liquidation of the corporation, are income, when received
by the stockholder, and subject to taxation under the statute.
Such definition was within the power of the Legislature.
A manufacturing corporation, incorporated in another State, whose stock
was of the par value of $50, previous to 1898 had ceased to carry on
business except such as was incidental to ownership of the majority of
the shares of the stock of two other corporations which it had caused
to be organized, to which it had sold its factory, and increases in whose
capital stock it had subscribed for from time to time, paying therefor
with dividends received by it on its shares in those corporations and
from sales of its real estate.   In 1923, one of the subsidiary corporations
was liquidated, and the parent company received $150,000 as dividends
in liquidation.   In 1924, the parent corporation dissolved and stock-
holders were paid in liquidation, for each share, $9.88 in cash and seven
eighths of a share in the remaining subsidiary corporation, each share
of which then was of the value of $171.   *Held,* that
   (1) The retirement of the parent company from the business of
manufacturing, the sale of its factory property, and the investment of

all its capital and profits in the stock of the two other corporations, continued for many years, did not constitute a permanent dedication of all this property to capital uses so that its distribution in final liquidation was wholly of capital and in no part of accumulated profits;

(2) It was proper to assess upon a trustee under the will of one, who died in 1914 owning stock in the parent company which the trustee still owned, an income tax upon income for the year 1924 at the rate of six per cent upon the percentage of the income of the trust which was paid to inhabitants of this Commonwealth, computed upon the difference between the value of what the trustee received in liquidation of the parent company in cash and stock of the subsidiary corporation and the par value of the stock of the parent corporation which he owned.

COMPLAINT, filed in the Superior Court on February 8, 1926, and afterwards amended, seeking abatement of $3,673.08 of an income tax assessed upon the complainant for the year 1925 upon its income for the year 1924, and paid by the complainant under protest.

The facts were agreed upon. Material facts are stated in the opinion. The case was reported by *Weed*, J., upon the facts agreed upon without a decision, for determination by this court.

*P. Nichols*, (*J. A. Boyer* with him,) for the complainant.
*R. A. Cutter*, Assistant Attorney General, for the respondent.

RUGG, C.J. This is a complaint under G. L. c. 62, § 47, against the defendant for abatement of an income tax. The case comes before us upon the pleadings and an agreed statement of facts by report without decision by a judge of the Superior Court. The complainant as trustee under the will of one Wilbur was in 1924 owner of 600 shares of stock in the Pawtucket Hair Cloth Company, hereafter called the Pawtucket Company, and liable to taxation on whatever income it received from such shares. Wilbur died in 1914, having acquired the stock during his life. The Pawtucket Company was incorporated under the laws of the State of Rhode Island in 1861, with an authorized capital of $100,000 divided into shares of the par value of $50 each. It became the owner of a factory and machinery, and engaged in the profitable manufacture of hair cloth for a number of years, its capital stock being increased from time to time. Demand for its product having dwindled, its charter was amended in 1889 so as to enable it to hold stock in other manufacturing

corporations. Subsequently it caused to be organized and to embark in the business of manufacturing two other corporations, the Royal Weaving Company in 1889 and the American Hair Cloth Company in 1893. In each of these corporations the Pawtucket Company held a majority of the shares of capital stock. To these corporations it at first leased and subsequently sold the portions of its factory occupied by each, so that, prior to 1898, it owned no property except its stock in these two other corporations, and carried on no business except that incidental to ownership of such stock. The capital stock of the Pawtucket Company thereafter was increased from time to time, mainly to enable it to subscribe for considerable increases in the capital stock of these two other corporations, both of which were prosperous. Substantial parts of money required for its purchases of such stock were derived from its dividends on these two stocks owned by it, and also from the sale of its real estate. The American Hair Cloth Company was liquidated in 1923, and the Pawtucket Company received $150,000 as its dividends in liquidation on its stock in that corporation. In 1924 the stockholders of the Pawtucket Company voted to dissolve that corporation and to divide its assets among its stockholders. This was accomplished by dividing its cash on hand and distributing its shares of stock in the Royal Weaving Company ratably among its own stockholders. Thereby the complainant, in 1924, received on each of its shares in the Pawtucket Company $9.88 in cash and seven eighths of a share of stock in the Royal Weaving Company, the market value of each such share at the time of distribution being $171. The beneficiaries of the trust under which the complainant held its shares of stock in the Pawtucket Company were to the extent of 86.32 per cent inhabitants of this Commonwealth in 1924. Confessedly, therefore, that percentage of the dividend received by the complainant is to be taxed if such dividend is subject to any income tax under the law. G. L. c. 62, § 10. The respondent assessed upon the petitioner a tax at the rate of six per cent upon that percentage of this dividend in liquidation, calculated upon the difference between the value of the stock in the Royal Weaving Com-

pany plus the cash received in liquidation and the par value of the stock of the Pawtucket Company, taken to be $30 per share.

The provisions of the governing statute, G. L. c. 62, § 1, subsection (b) in the amended form appearing in St. 1923, c. 487, § 3, and subsection (g), so far as material to the facts in the present case, are in these words: "Income of the classes described in subsections (a), (b), (c) and (e) received by any inhabitant of the Commonwealth during the preceding calendar year, shall be taxed at the rate of six per cent per annum. . . . (b) Dividends, other than stock dividends paid in new stock of the company issuing the same, on shares in all corporations . . . organized under the laws of any State or nation other than this Commonwealth, [with exceptions having no bearing on the case at bar] . . . . (g) No distribution of capital, whether in liquidation or otherwise, shall be taxable as income under this section; but accumulated profits shall not be regarded as capital under this provision." As matter of interpretation the words of the statute manifest a purpose to impose the tax upon all income of the classes described, received by inhabitants of the Commonwealth, and to include within its sweep whatever such income is within the legislative jurisdiction. Subsection (b) standing by itself, as mere matter of verbal construction, might be thought to comprehend all kinds of dividends declared by the specified corporations, whether in liquidation or otherwise, excepting only stock dividends in the capital stock of the corporations issuing the same. Subsection (g), however, defines what shall be regarded as capital and thus not rightly taxable as income, and what shall be treated as income and thus properly subject to the tax. This definition states the distinction between capital and income in respect to this kind of taxation. While it does not elucidate "capital" by any further statement, it does explain the meaning of "income" by saying expressly that accumulated profits shall not be treated as capital, and by stating impliedly that accumulated profits shall be treated as income taxable accordingly. This definition doubtless was designed, so far as possible, to avoid perplexing questions touching distinctions under general

principles of law between capital and income, and to render the tax law as simple and easy of application as reasonably practicable. Difficulties which may arise in the absence of some definition are illustrated by *Lynch* v. *Turrish*, 247 U. S. 221, and the cases there reviewed. It is a general principle of the law of private corporations that accumulated profits or surplus give to the stockholders no right to income in the form of dividends until the directors in their discretion vote to declare a dividend. *Fernald* v. *Frank Ridlon Co.* 246 Mass. 64, 71, 72, and cases there cited. *Thomas* v. *Laconia Car Co.* 251 Mass. 529, 535. *Adams* v. *Eastern Massachusetts Street Railway*, 257 Mass. 115, 131. *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330, 338.

There can be no doubt of the power of the Legislature thus to define that accumulated profits, when declared in way of dividend in liquidation, shall be income when received by the stockholder. *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 534, 535.

The retirement of the Pawtucket Company from the business of manufacturing, the sale of its factory property, and the investment of all its capital and profits in the stock of the two other corporations, continued for many years, do not constitute a permanent dedication of all this property to capital uses, so that its distribution in final liquidation is wholly of capital and in no part of accumulated profits. Doubtless for some purposes there may be by a corporation such investment of its income in permanent improvements as to constitute capital even without increase in the number of shares of capital stock issued. That principle has been recognized with respect to the rights of life tenant and remainderman, although instances of the application of that principle have been extremely rare. *D'Ooge* v. *Leeds*, 176 Mass. 558, 562. It is not necessary to determine how far, if at all, this principle may be applicable under the income tax law, subsection (g), as we have interpreted it, because in the case at bar the facts do not warrant the conclusion that there has been a permanent dedication of profits of the Pawtucket Company to capital uses. The investments of that company for many years last past were exclusively in

personal property. Such investments might have been readily changed and divided in whole or in part without material alteration in the kind of business conducted by that company. Its capacity to conduct the business authorized by its charter would not have been thereby affected in essential particulars. The case at bar on this point is governed by *Lapham* v. *Tax Commissioner*, 244 Mass. 40.

In the light of G. L. c. 62, § 1, subsection (g), as interpreted, plainly it is an immaterial circumstance whether the stockholder made an investment of his own capital in the hope of receiving a dividend of accumulated profits. The Legislature, acting within its power, has stamped such dividend of accumulated profits as income and taxable as such. *Tax Commissioner* v. *Putnam, supra. Lynch* v. *Hornby*, 247 U. S. 339.

From an examination of the original papers in *Moore* v. *Tax Commissioner*, 237 Mass. 574, it appears in the agreed statement of facts that "for a long time prior to January 1, 1916 [the date from which the income tax became operative], said corporation [in which the complainant in that case owned stock] had assets amounting to a much larger amount than the capital stock, and an amount equal to or larger than the amount distributed by said corporation in the year 1918," and that the complainant was the owner of the stock on January 1, 1916, and for many years prior thereto, and that on January 1, 1916, said stock was worth as an investment or in the market more than the amount received by her in liquidation in 1918, and that she "inherited this stock from her father's estate twenty-three years ago, and that at that time the assets of the corporation were equal to or exceeded the amount of its distribution in liquidation." Further facts appear in the opinion, page 575: "The capital stock of this corporation was $238,000, divided into shares of a par value of $100 per share. On January 1, 1916, the corporation had corporate assets equal to or larger than $416,000. Its excess assets over its capital stock on January 1, 1916, were used and had been used for many years as actual working capital in carrying on the business of the corporation in the same manner as other assets were used, and such was

necessary in carrying on the business in a proper and reasonable manner." All these facts were the basis of arguments urged in behalf of that complainant. They afford quite as plausible grounds for an abatement as those disclosed on the present record. With all these facts in the mind of the court, the decision in that case was in favor of the validity of the tax and against an abatement. That decision covers in every essential the contentions made by the complainant in the case at bar. Without overruling that decision it is not possible within the bounds of reason to sustain the abatement here sought.

The result is that both on principle and on authority the complainant must fail on its main contention.

It was conceded rightly at the argument in open court by the Attorney General that the computation of the income by the respondent ought to have been on the basis of a par value of $50 per share instead of $30 per share. Abatement must be granted, to be calculated on that basis. The details are to be fixed in the Superior Court.

*Ordered accordingly.*