COMMISSIONER OF CORPORATIONS AND TAXATION *vs.*
JOHN W. FILOON, executor.

SAME *vs.* SAME.

Suffolk. October 5, 1938. — December 29, 1941.

Present: FIELD, C.J., DONAHUE, QUA, & DOLAN, JJ.

*Tax,* On income. *Corporation,* Capital, Income. *Evidence,* Presumptions and burden of proof. *Words,* "Capital," "Accumulated profits," "Paid-in surplus," "Capital surplus," "Income."

Upon an appeal by the commissioner of corporations and taxation from a decision by the Appellate Tax Board granting an abatement of an income tax, the question before this court was whether, upon facts found by the board, the taxpayer as a matter of law had sustained the burden of proving that he was entitled to the abatement.

The standpoint from which to determine whether a dividend paid to a stockholder was, under § 1 (g) of G. L. (Ter. Ed.) c. 62, a distribution of "capital" and therefore not taxable, or of "accumulated profits" and therefore taxable, is that of the corporation and not that of the stockholder; it is immaterial whether the stockholder received by the dividend more or less than the amount actually invested by him.

Determination of the question whether a corporate dividend was, under · § 1 (g) of G. L. (Ter. Ed.) c. 62, a distribution out of "capital" or out of "accumulated profits" must be made as of the time of such distri- . bution.

To sustain an abatement of an alleged income tax granted by the Appellate Tax Board on the ground that a dividend received by the taxpayer was, under § 1 (g) of G. L. (Ter. Ed.) c. 62, a distribution by a corporation out of "capital" and not out of "accumulated profits," where the record on an appeal by the commissioner, while showing that the distribution was made in a certain year, did not show at what time during that year it was made, it must appear from the facts found by the board that at no time during that year could the distribution have been from "accumulated profits."

In § 1 (g) of G. L. (Ter. Ed.) c. 62, the word "capital" means property invested in the corporation by its stockholders, including both such

invested property as is necessary to balance its capital stock liability, commonly called "legal capital," and such as is in excess of that liability, commonly called "paid-in surplus" or "capital surplus"; and the words "accumulated profits" mean property earned by the corporation as distinguished from such investments.

Upon the question whether a corporate dividend paid during a certain year was a distribution of capital within § 1 (g) of G. L. (Ter. Ed.) c. 62, it was determined that an impairment of capital existing at the beginning of the year through losses in corporate operations was so large that there was no reasonable probability that it was restored at the time of the distribution in view of the amount of net earnings from corporate operations shown during the entire year, although only the net earnings for the entire year appeared and the dates during the year when the earnings accrued and the date when the distribution was made did not appear.

A dividend paid by a corporation was as matter of law a distribution out of capital within § 1 (g) of G. L. (Ter. Ed.) c. 62, and consequently was nontaxable as income received by a stockholder where net earnings of the corporation through its operations previous to the time of such payment were not sufficient to restore an impairment of capital.

Dividends paid by a corporation following the making of net earnings subsequent to a period when its capital was impaired as a matter of law continued to be distributions out of capital under § 1 (g) of G. L. (Ter. Ed.) c. 62, and nontaxable as income received by a stockholder until at a time of such a dividend all such impairment of capital had been restored.

APPEALS, on March 8, 1938, from decisions of the Appellate Tax Board.

*J. B. Sullivan*, Assistant Attorney General, for the Commissioner of Corporations and Taxation.

*E. L. Twomey*, (*G. A. Sawyer* with him,) for the taxpayer.

*A. L. Newton*, *R. G. Boyd*, & *J. M. Dry*, by leave of court submitted a brief as amici curiae.

FIELD, C.J. These are appeals by the commissioner of corporations and taxation from two decisions by the Appellate Tax Board granting abatement of income taxes assessed upon income from dividends of the V. & F. W. Filoon Company, a Massachusetts corporation — herein referred to as the corporation — received by Fred W. Filoon of Brockton — herein referred to as the taxpayer — during the years 1933 and 1934 respectively. G. L. (Ter. Ed.) c. 58A; St. 1937, c. 400. The taxpayer died after the entry of the appeals in this court and they were defended here by his executor.

The burden of establishing that the taxpayer was entitled to abatement was upon him. *Staples* v. *Commissioner of Corporations & Taxation*, 305 Mass. 20, 26. The facts were found by the Appellate Tax Board. The appeals from its decisions bring before us only the issues of law "raised in the proceedings before the board." G. L. (Ter. Ed.) c. 58A, § 13, as amended by St. 1933, c. 321, § 7; see St. 1937, c. 400, §§ 1, 4. The questions hereinafter considered appear to have been so raised.

Statute 1933, c. 307, § 9 (unchanged, so far as the questions here involved are concerned, by St. 1935, c. 489, § 1, and later statutes), provides that income "received by any inhabitant of the commonwealth during the years nineteen hundred and thirty-three, nineteen hundred and thirty-four . . . from dividends on shares in all corporations . . . organized under the laws of this commonwealth . . . shall be taxed at the rate of six per cent per annum. Except as otherwise provided in this section, the provisions of chapter sixty-two of the General Laws, as amended, shall apply to the taxation of income received by any such inhabitant during said years." No exception to this provision is here material. G. L. (Ter. Ed.) c. 62, § 1, relating to the tax upon certain classes of income including dividends of Massachusetts corporations, provides in subsection (g): "No distribution of capital, whether in liquidation or otherwise, shall be taxable as income under this section; but accumulated profits shall not be regarded as capital under this provision." See also St. 1935, c. 480, § 1.

Under these statutes the taxpayer was not subject to an income tax on the dividends here in question received by him if they were distributions of capital within the meaning of G. L. (Ter. Ed.) c. 62, § 1, subsection (g). The fundamental issue of law between him and the commissioner is whether, on the facts found by the board, the dividends were such distributions or were distributions of accumulated profits. The board ruled, in substance, that they were distributions of capital and on this ground abated the income taxes assessed upon such dividends. The commissioner contends that the board was wrong.

The board found the following facts: During the year 1933 the taxpayer was the owner of one thousand shares of prior preferred stock of the corporation upon which he received dividends of $6 per share in four instalments of $1,500 each, totalling $6,000. He reported the amount in his 1934 income tax return of income received during 1933 as "prior Preferred Stock dividend paid out of Paid-in Capital Surplus." The commissioner assessed an income tax thereon of $360. During the year 1934 the taxpayer was the owner of one thousand shares of prior preferred stock, and one thousand four hundred fifty shares of preferred stock of the corporation. He received during that year $6,000 in dividends paid on the former stock and $8,700 paid on the latter. He reported these amounts in his 1935 income tax return of income received during 1934 as "paid out of Paid-in capital and surplus." The commissioner assessed an income tax thereon of $882 and ten per cent thereof ($88.20) as an additional income tax under St. 1935, c. 480, § 1. The board ordered abatements on the ground that these taxes were improperly assessed. Adjustments on account of interest paid and other items resulted in abatement of the tax assessed on account of income of the year 1933 of $402.87, and on account of income of the year 1934 of $996.82.

The question whether the distributions made by the dividends paid to the taxpayer as above described were distributions of capital within the meaning of G. L. (Ter. Ed.) c. 62, § 1, subsection (g), is to be determined from the standpoint of the corporation making the distributions rather than from the standpoint of the stockholder receiving the dividends. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 298 Mass. 263, 266. Facts found by the board relating to the financial condition of the corporation are as follows: On January 1, 1930, the corporation, which had been in business for about twenty years, was capitalized at $600,000, represented by three thousand shares of common stock of a par value of $100 per share and three thousand shares of preferred stock of the same par value per share. Of this total capital, $500,000

had been paid in and $100,000 represented a stock dividend of one thousand shares of common stock of the par value of $100 per share. As of January 1, 1930, there was an earned surplus in the amount of $81,137.60. (The fiscal year of the corporation during the years in question apparently ran from December 1 to November 30 inclusive.) On November 28, 1930, there was transferred to the surplus account of the corporation the sum of $36,250, representing amounts due from the corporation to the taxpayer, who was the principal stockholder in the corporation. "On November 17, 1931, the par value of the 3,000 shares of common stock was reduced from $100 to $50 per share, thereby reducing the total value of the common stock to $150,000 and the total valuation of all the stock to $450,000. At the same time it was voted to issue and to sell to the . . . [taxpayer] 1,000 shares of prior preferred stock of the par value of $100 per share. The stock was duly issued to the . . . [taxpayer] and his 'personal account' with the company, consisting in part of unpaid salary due to him, and in part of advances made by him to the company, and interest thereon, was debited in the amount of $100,000. The total par value of the capital stock, therefore, was $550,000. The $150,000 represented by the reduction in value of the stock was credited to the surplus account. Consequently, at the end of its fiscal year 1932 the capital structure of the corporation consisted of 3,000 shares preferred stock, of a par value of $100, or $300,000, 3,000 shares of common stock of a par value of $50, or $150,000, and 1,000 shares of prior preferred stock of a par value of $100, or $100,000, totalling in all, $550,000. The total amount added to surplus during the period between January 1, 1930, and December 1, 1932, was $267,387.60, of which $81,137.60 was earned. During the same period, the corporation suffered a loss of $228,348.98 and paid out dividends of $32,216.67, a total of $260,565.65. This amount exceeded the earned surplus of $81,137.60 by $179,428.05, and reduced the paid-in surplus account on the books to $6,821.95, as of December 1, 1932.

"During the period between December 1, 1932, and No-

vember 30, 1933, the corporation had net earnings of $62,743.19, which added to the balance in the surplus account as of December 1, 1932, resulted in a total of $69,556.14. During the same period the corporation distributed dividends totalling $6,000, all of which were paid to the . . . [taxpayer] on his prior preferred stock. Capital surplus as of December 1, 1933, was therefore, $63,556.14. This sum, plus the par value of the capital stock, equalled $613,556.14, which amount was less by $122,693.86 than the total paid in capital and surplus of $736,250. We accordingly find that on November 30, 1933, the end of the corporation's fiscal year, the capital was impaired in the amount of $122,693.86.

"During the period December 1, 1933, to November 30, 1934, the . . . [corporation] suffered a net loss of $89,403.65 and during the same period paid out dividends in the amount of $24,000, the two items totalling $113,304.65, resulting in an impairment of capital to said amount; so that as of November 30, 1934, the impairment was $235,998.51." [1]

The board "accordingly find that during the years 1933 and 1934, at the time when the dividends taxed were distributed to the . . . [taxpayer], the capital of the corporation, including the earnings of the company in the year 1933, was at all times insufficient to meet the outstanding capital stock liability plus actual paid-in surplus." The board "also find, as far as it is a matter of fact, that the distributions were paid out of capital or paid-in surplus."

1. The decision of these cases requires an interpretation of G. L. (Ter. Ed.) c. 62, § 1, subsection (g), particularly with respect to the meaning of the word "capital" and the words "accumulated profits," as used therein, in the light of the context of the subsection and its purpose, and the application of the subsection so interpreted to the facts found as above recited. See *Commissioner of Corporations & Taxation* v. *Morgan*, 306 Mass. 305, 307. It is "capital"

---

[1] Certain slight discrepancies in the figures are immaterial for the decision of the cases.

that may be distributed "in liquidation or otherwise" without being subject to a tax as income of the shareholders, while "accumulated profits" may not be so distributed even by a liquidation dividend (see *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 262 Mass. 1; *Follett* v. *Commissioner of Corporations & Taxation,* 267 Mass. 115) unless by a stock dividend under some circumstances. See *Commissioner of Corporations & Taxation* v. *Morgan,* 306 Mass. 305.

2. The determination of the question whether the distributions by dividends were made out of "capital" or out of "accumulated profits" is to be made as of the times respectively of such distributions. In *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 298 Mass. 263, 266, it was said that it "is plain that under subsection (g) the question whether or not a distributed fund is capital is to be determined primarily with reference to the status of that fund before distribution." See also *Lanning* v. *Tax Commissioner,* 247 Mass. 496, 497–498. Not only is there nothing in the governing statute to indicate that operations of the corporation after distribution are to be considered, but also there is nothing to indicate that a determination as between "capital" and "accumulated profits" is to be made as of any time prior to distribution, such, for example, as the end of the last preceding accounting period or fiscal year of the corporation, without consideration of operations of the corporation between that time and the time of distribution. The question is not presented in these cases whether the time of distribution from the standpoint of the corporation is the date of declaration of a dividend, the date as of which it is payable to the shareholders, or the date on which it is actually paid (see *Nutter* v. *Andrews,* 246 Mass. 224, 227; *Lanning* v. *Tax Commissioner,* 247 Mass. 496, 497–498). The cases were treated by the board and argued by the parties on the ground that, on the facts found, the distributions were made in the years 1933 and 1934 respectively, and we so treat them. But there is nothing in the facts found to show the respective dates within such years when the distribu-

tions were made. The taxpayer, therefore, cannot prevail with respect to any distribution by way of a dividend if such a distribution made at any time during the year in which it was made would constitute a distribution of "accumulated profits."

3. General Laws (Ter. Ed.) c. 62, § 1, subsection (g), appeared in the same form in the income tax statute first passed after the adoption of the Forty-fourth Amendment to the Constitution of the Commonwealth — the income tax amendment. See St. 1916, c. 269, § 2. The meaning of the phrase "distribution of capital" used in this subsection as differentiated from "accumulated profits" was explained in the first case arising under the income tax statute. *Tax Commissioner* v. *Putnam*, 227 Mass. 522. That case presented the question of the liability of a shareholder to taxes upon certain dividends declared and paid in the year 1916. The court said "'Accumulated profits' as used in the statute are words of sufficiently comprehensive scope to include profits which had been earned and invested as had those here in question. [The profits in question were "an accumulation of earnings which before 1916 had been invested in permanent additions to the plants of the corporations involved." Page 534.] The words 'accumulated profits' are used as the antithesis of 'distribution of capital.' The latter would include payment of a part of the capital investment sold and returned to the shareholders, whereby the capacity of the corporation to carry on business was impaired or depleted." Page 535. It was further said in the opinion with respect to another dividend "declared and paid after the statute took effect, out of profits earned before it was enacted," "The extra cash dividend was declared out of surplus earnings which had accumulated during twenty-three years previous to March 1, 1913. Although it was large and had been accumulating for a long time, it was not the less a cash dividend. It came to the shareholder as his individual property for the first time when it was declared and paid in 1916. It was not in substance or effect a distribution of capital." Page 537. In each instance the dividend was held taxable. See also

*Tilton* v. *Tax Commissioner*, 238 Mass. 596, 598–599; *Lapham* v. *Tax Commissioner*, 244 Mass. 40, 45–47; *Lanning* v. *Tax Commissioner*, 247 Mass. 496; *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 262 Mass. 1; *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 273 Mass. 187, 200; *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 298 Mass. 263, 265–266.

In the cases decided after *Tax Commissioner* v. *Putnam*, 227 Mass. 522, that have applied said subsection (g) there has been no suggestion of modification of the general statement herein quoted therefrom, unless it be with respect to a phrase having no application to the present case, in which reference is made to capital investment returned to the shareholder "whereby the capacity of the corporation to carry on business was impaired or depleted." Page 535. See *Lapham* v. *Tax Commissioner*, 244 Mass. 40, 46, where that phrase was quoted and it was said that the "real question is whether the distribution is made from capital investment or from profits." See also *Moore* v. *Tax Commissioner*, 237 Mass. 574, 575; *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 262 Mass. 1, 5–7.

4. The word "capital" may have different meanings when used in different connections. See *Hood Rubber Co.* v. *Commonwealth*, 238 Mass. 369, 371; *Commissioner of Banks in re Prudential Trust Co.* 244 Mass. 64, 72. It appears, however, from the *Putnam* case and the cases following it, and from the general purpose of G. L. (Ter. Ed.) c. 62, § 1, subsection (g), that the word "capital" as used therein means property invested in the corporation by the stockholders, and is not limited in its meaning to "capital" in the narrow sense, sometimes described as "legal capital," that is, property sufficient to balance the capital stock liability. See *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 535; *Lapham* v. *Tax Commissioner*, 244 Mass. 40, 46; *Follett* v. *Commissioner of Corporations & Taxation*, 267 Mass. 115, 117, 118. Property paid in to the corporation by the shareholders in excess of the capital

stock liability — ordinarily in excess of the par value of the capital stock — constitutes what ordinarily is described as "paid in surplus" or "capital surplus" and, though not included in the "legal capital" of the corporation, is nevertheless "capital" in the sense in which the word is used in said subsection (g). Compare *LaBelle Iron Works* v. *United States*, 256 U. S. 377, 389; *Thorsen* v. *Commissioner of Internal Revenue*, 65 Fed. (2d) 234, 236. See also *Arey* v. *George Associates, Inc.* 299 Mass. 130, 135–136. Such a surplus represents property invested in the corporation and is within the obvious purpose of the statute that property so invested may be returned to shareholders without being subject to taxation as income. This conclusion as to the meaning of "capital" is in accord with the statutory differentiation between "capital" and "accumulated profits" (hereinafter considered) which are the two sources of distributions recognized by said subsection (g). The cases in which distributions in excess of the par value of the capital stock have been treated as distributions of "accumulated profits" did not involve "paid in surplus" or "capital surplus" and are not in conflict with this conclusion. See *United States Trust Co.* v. *Commissioner of Corporations & Taxation*, 299 Mass. 296, 303, and cases cited. Moreover, it is immaterial whether any particular shareholder receives upon a distribution by dividend more or less than the amount actually invested by him personally. See *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 298 Mass. 263, 265–266. Compare *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 262 Mass. 1, 6. The test of taxability is the source of the distribution.

So long as a "capital surplus" in substance represents property paid in to the corporation by its shareholders, such surplus is included in "capital" within the meaning of G. L. (Ter. Ed.) c. 62, § 1, subsection (g). The "legal capital" of a corporation may be reduced by the reduction of the capital stock of a corporation. But such a reduction may be made without reducing the "capital" of the corporation in the sense in which the word is used in G. L.

(Ter. Ed.) c. 62, § 1, subsection (g). See G. L. (Ter. Ed.) c. 156, §§ 41, 45. The result of such a reduction of capital stock where property constituting "legal capital" is not returned to the shareholders is to transform "legal capital" into "capital surplus," sometimes described as "reduction capital." But such "capital surplus" is none the less an investment of property by the shareholders constituting "capital" of the corporation within the meaning of G. L. (Ter. Ed.) c. 62, § 1, subsection (g). Whatever the method by which a "capital surplus" is created, it is not uncommonly described, as in the present case, as "paid in surplus." On the other hand the "capital" of the corporation in this sense, as well as its "capital" in the narrow sense of "legal capital," may be increased by a stock dividend declared out of "accumulated profits." Such a dividend, under our decisions, is a distribution of such profits to the shareholder, constituting income of such shareholder. Whether or not such income is taxable depends upon the applicable statute, which has been changed from time to time. See *Tax Commissioner v. Putnam*, 227 Mass. 522, 534–536; *Brink v. Commissioner of Corporations & Taxation*, 299 Mass. 280, 283–284; *Commissioner of Corporations & Taxation v. Morgan*, 306 Mass. 305. And the effect of a stock dividend is to capitalize the income so distributed, whether or not subject to taxation under the applicable statute. As was said of a stock dividend in the *Putnam* case, "In essence the thing which has been done is to distribute a symbol representing an accumulation of profits, which instead of being paid out in cash is invested in the business . . . In this aspect of the case the substance of the transaction is no different from what it would be if a cash dividend had been declared with the privilege of subscription to an equivalent amount of new shares." Page 535. The effect of the transaction from the standpoint of the corporation is to distribute accumulated profits to the shareholders and to receive from such shareholders the amount thereof as an investment by them of their property, constituting not only an increase of the "legal capital" of the corporation but also an increase of its "capital" in

the sense in which the word is used in G. L. (Ter. Ed.) c. 62, § 1, subsection (g).

5. The words "accumulated profits" in G. L. (Ter. Ed.) c. 62, § 1, subsection (g), are used, as was said in the *Putnam* case, "as the antithesis of 'distribution of capital.'" Such "accumulated profits" may be described as "earned surplus" or "undivided profits" to distinguish them from "capital" in the broad sense, including "paid in surplus" or "capital surplus." The "accumulated profits" of a corporation represent property earned by the corporation as distinguished from property invested therein by the shareholders. Such "accumulated profits" may include earnings resulting from capital transactions as well as those resulting from ordinary operations of the corporation. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 262 Mass. 1, 5–6. *Follett* v. *Commissioner of Corporations & Taxation*, 267 Mass. 115, 118–120. They are in the nature of "income" of such corporation. See *Lapham* v. *Tax Commissioner*, 244 Mass. 40, 44–45; *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 298 Mass. 263, 265. Though there are differing conceptions of "income," for the purpose of income taxation, "income" has been broadly defined as "the true increase in amount of wealth which comes to a person during a stated period of time." *Bingham* v. *Commissioner of Corporations & Taxation*, 249 Mass. 79, 80. *United States Trust Co.* v. *Commissioner of Corporations & Taxation*, 299 Mass. 296, 299. See also *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 526; *Brown* v. *Commissioner of Corporations & Taxation*, 242 Mass. 242, 244; *Van Heusen* v. *Commissioner of Corporations & Taxation*, 257 Mass. 488, 491. This definition states an underlying principle that, however, requires explanation, if not qualification, as applied to specific facts. For example, mere appreciation in value, not realized, though in a broad sense representing an increase in wealth, is not ordinarily regarded as "income" for the purposes of taxation. *Van Heusen* v. *Commissioner of Corporations & Taxation*, 257 Mass. 488, 491. *Crocker* v. *Commissioner of Corporations & Taxation*, 280 Mass. 238,

242. See also *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 529, 530. This underlying principle, however, was the ground of decision in *Brown* v. *Commissioner of Corporations & Taxation,* 242 Mass. 242, 244. And this underlying principle is applicable to "accumulated profits" of a corporation. They constitute, from the standpoint of the corporation, an "increment of value" that may be distributed to shareholders as income of such shareholders. *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 535. See also *Lapham* v. *Tax Commissioner,* 244 Mass. 40, 43–44; *Follett* v. *Commissioner of Corporations & Taxation,* 267 Mass. 115. Such "accumulated profits" necessarily take into account losses as well as gains in the course of operations of the corporation during the period for which its "accumulated profits" are to be ascertained, that is, the period during which they were accumulated. See *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 298 Mass. 263, 265–266. See also *Lapham* v. *Tax Commissioner,* 244 Mass. 40, 45–46. The amount of such "profits" of a corporation, of course, is to be ascertained as of a fixed date — the date of distribution — but with respect to the period during which they have accumulated. The "accumulated profits" for this period are to be considered as a unit. Compare *Loevy* v. *Commissioner of Corporations & Taxation,* 245 Mass. 174, 177. At least in the absence, as here, of any statutory provision for ascertaining the amount of such "accumulated profits" they must be ascertained in accordance with the underlying principle applicable to income — that such "accumulated profits" represent the true increase in amount of wealth of the corporation during the period in question ending at the date of distribution. To what extent realization of such profits is essential need not be considered in this case. Compare *Tilton* v. *Tax Commissioner,* 238 Mass. 596.

6. An important question for determination in this case is the length of the period that is to be considered in ascertaining the "accumulated profits." Since, however, the end of the period in the case of each dividend is the date of distribution thereof, the real question for determination is

at what date did such period begin. There is nothing in the governing statute expressly limiting the period of accumulation of profits to any calendar year, to any fiscal year or other accounting period of the corporation, or even to the period after the passage of the income tax statute. Under the decisions of this court the period may be long and may have begun even before the passage of the income tax statute. See *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 534–537; *Lapham* v. *Tax Commissioner,* 244 Mass. 40, 47; *Lanning* v. *Tax Commissioner,* 247 Mass. 496, 497. In the case of one of the dividends considered in the *Putnam* case, declared in 1916 — the year in which the income tax statute was passed — the profits out of which it was declared had "accumulated during twenty-three years previous to March 1, 1913." Page 537. Yet the dividend was held taxable as income of the shareholder receiving it in the year 1916. The natural conclusion is that the period of accumulation of profits is, in general, the entire period of the existence of the corporation. At least there must be some special circumstance to limit more narrowly the period. Whether there was any such circumstance in the present cases will be considered in the light of the facts found.

7. (a) Though the corporation began business many years earlier, the facts found as of January 1, 1930, render it unnecessary to go back of that date for an analysis of the operations of the corporation. On that date the capital stock liability of the corporation, its "legal capital" and its "capital" within the meaning of G. L. (Ter. Ed.) c. 62, § 1, subsection (g), resulting in part from a stock dividend, were each $600,000. And on that date there were "accumulated profits" — "earned surplus" — in the amount of $81,137.60.

(b) The details of the operations of the corporation for the period beginning with January 1, 1930, and ending with November 30, 1932, are not fully stated in the record. During that period, by reason of a reduction of capital stock, a payment into the corporation by a stockholder, and an issue of capital stock, the amount of the capital

stock liability and of the "legal capital" became $550,000, and a "paid in surplus" or "capital surplus" was created amounting to $186,250, so that the "capital" of the corporation within the meaning of G. L. (Ter. Ed.) c. 62, § 1, subsection (g), amounted to $736,250. It is not clear from the record whether "capital" at any time during the period from January 1, 1930, to November 30, 1932, was unimpaired, but the investment by the shareholders, which constituted its "capital," was this amount. And the "accumulated profits" — "earned surplus" — at the beginning of the period amounted to $81,137.60 as already stated. During this period, however, the corporation incurred losses to the amount of $228,348.98 and distributed dividends to the amount of $32,216.67, an aggregate amount of $260,565.65. Accordingly the "accumulated profits" or "earned surplus" was completely extinguished by December 1, 1932. On that date the "legal capital" — property sufficient to balance its capital stock liability — of the corporation was not impaired, but the "paid in surplus" or "capital surplus" had been reduced by $179,428.05 (the excess of the sum of the losses and distribution — $260,565.65 — over the "accumulated profits" or "earned surplus" — $81,137.60) to $6,821.95. Consequently there was an impairment of "capital" within the meaning of this word in G. L. (Ter. Ed.) c. 62, § 1, subsection (g), of at least $147,211.38 by reason of these losses. Whether the dividends during this period were declared and paid out of "accumulated profits" or "earned surplus" or, on the other hand, out of "paid in capital" or "capital surplus" (see *Smith* v. *Cotting*, 231 Mass. 42, 48) does not appear from the record. In view, however, of the other facts found in regard to impairment of "capital," it is immaterial whether such dividends resulted in a reduction of "paid in surplus" or "capital surplus" by reason of a return of a part thereof to the shareholders, or indirectly effected a further impairment of "capital."

(c) If the financial condition of the corporation as of December 1, 1932, as above stated, had continued unchanged up to the date of distribution by a dividend of $6,000 in the

year 1933, such dividend clearly would not have been a distribution of "accumulated profits" subject to taxation as income, since there would have been no such profits to distribute. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 298 Mass. 263, 265–266. But, during the period from December 1, 1932, to November 30, 1933, inclusive, the corporation had net earnings amounting to $62,743.19, and the question is thus presented as to the effect of such net earnings upon the taxability of the dividend. In the absence of findings as to the date within the year 1933 of the distribution by dividend and as to the net earnings of the corporation between December 1, 1932, and the date of this distribution, we treat these net earnings of $62,743.19 as having been made prior to the date of distribution — the aspect of the situation most favorable to the commissioner — since the burden of proof was on the taxpayer. While conceivably the net earnings for this period might have been greater than for the entire period between December 1, 1932, and November 30, 1933, yet unless they exceeded $147,211.38 the result would not be affected thereby. On the facts found there is no reasonable probability that the net earnings prior to the date of distribution were larger in amount, and the ultimate finding of the board that the distribution by this dividend was "paid out of capital or paid-in surplus" cannot be set aside on this ground.

We are of opinion that the net earnings amounting to $62,743.19 in the period between December 1, 1932, and November 30, 1933, inclusive, did not render taxable the dividend of $6,000 in 1933. This is clearly true if, in accordance with the general principle above stated, the "accumulated profits" of the corporation are to be ascertained with reference to the entire period of the operations of the corporation prior to the distribution by this dividend. Such operations resulted not in "accumulated profits" but rather in a loss. Though the corporation on January 1, 1930, had "accumulated profits" or "earned surplus" amounting to $81,137.60, the addition thereto of net earnings of $62,743.19 in the period between December 1, 1932,

and November 30, 1933, would fall far short of offsetting the losses aggregating $228,348.98 sustained by the corporation between January 1, 1930, and December 1, 1932, with the result that at the time of the distribution by dividend in 1933 the corporation had no "accumulated profits" to be distributed.

Doubtless it might be argued that the fact that as of December 1, 1932 — the beginning of the period in which the corporation had net earnings amounting to $62,743.19 — not only had the previously "accumulated profits" of the corporation been exhausted, but also its "capital" within the meaning of G. L. (Ter. Ed.) c. 62, § 1, subsection (g), had been depleted or impaired, furnishes a ground for a new starting point on December 1, 1932, of the period for which "accumulated profits" are to be ascertained. But we find no support for such a conclusion in the governing statute. The statute contains no provision limiting this period to the fiscal year or to any other accounting period of the corporation. It would hardly be contended that so long as a corporation had "accumulated profits" the amount thereof would not be increased by subsequent profits or decreased by subsequent losses. A consistent application of this method of ascertaining "accumulated profits" would require that if at any date losses exceeded prior "accumulated profits" the deficiency in such profits should be made good before the corporation could be said to have "accumulated profits." In the absence, as here, of any express statutory method of computing "accumulated profits," no reason is apparent for disregarding losses causing such a deficiency, subdividing the ordinary period for the computation of "accumulated profits," and beginning a new period for such computation on the date the corporation began again to accumulate profits. Such a method of computing "accumulated profits" would conflict with the general principle that profits represent a true increase in the wealth of the corporation and with the purpose of G. L. (Ter. Ed.) c. 62, § 1, subsection (g), to permit a tax free return to shareholders of their investment. Disregarding such losses would result in creating a

fictitious increase of the amount of wealth of the corporation that is derived from the investment of capital by the shareholders. There is no such finality in the fact that a corporation sustaining losses in excess of its "accumulated profits" or "earned surplus" thereby, in effect, depletes or impairs its "capital," in the sense in which that word is used in G. L. (Ter. Ed.) c. 62, § 1, subsection (g), that such losses can no longer properly be considered in determining whether as of a subsequent date the corporation has "accumulated profits" or "earned surplus."

The conclusion here reached is not fairly open to the objection that it permits evasion of income taxes by enabling a corporation to pay nontaxable dividends to its shareholders by making distribution out of "capital," subsequently returning such "capital" out of "accumulated profits," and repeating the process from time to time. The "capital" so distributed would reduce the capital investment of the shareholders that could be distributed by tax free dividends, and the process could not be repeated with respect to "capital" restored out of "accumulated profits." The limit of such tax free distribution would be the capital investment of the shareholders.

The decision here made does not imply that a corporation having a "paid in surplus" or "capital surplus" that has been depleted or impaired by losses cannot legally pay dividends until such "paid in surplus" or "capital surplus" has been restored out of "accumulated profits." We are not required to consider that question. See, however, *Smith* v. *Cotting*, 231 Mass. 42, 48. The ground of the decision is that a corporation in the situation described has no "accumulated profits" for distribution by a dividend taxable to the shareholders within the meaning of G. L. (Ter. Ed.) c. 62, § 1, subsection (g).

The conclusion here reached is in conformity with the reasoning and decision in *Willcuts* v. *Milton Dairy Co.* 275 U. S. 215, though the statute there under consideration was materially different from the statute here under consideration. In that case the question involved was the meaning

of "invested capital" as used in the Federal Revenue Act of 1918 (40 U. S. Sts. at Large, 1057) as applied to the excess profits tax. Section 326 (a) of this statute defined "invested capital," with exceptions not here material, as the actual cash and cash value of other property, bona fide paid in for stock or shares, at the time of such payment, and paid in or earned surplus and undivided profits, not including surplus and undivided profits earned during the year. Pages 216–217. The court said of these terms that both "these terms, as commonly employed in corporate accounting, denote an excess in the aggregate value of all the assets of a corporation over the sum of all its liabilities, including capital stock . . . But it is a prerequisite to the existence of 'undivided profits' as well as a 'surplus,' that the net assets of the corporation exceed the capital stock. Hence, where the capital is impaired, profits, though earned and remaining in the business, if insufficient to offset this impairment do not constitute 'undivided profits.' . . . We do not think Congress intended that a corporation whose capital was impaired should be entitled to treat profits that, though earned, were insufficient to make good the impairment and create a surplus, as 'undivided profits.'" Pages 218–219. This reasoning is equally applicable, so far as a determination of "accumulated profits" is concerned, where, as in the statute here under consideration, "capital" includes "paid in surplus" or "capital surplus." A similar conclusion was reached in *Foley Securities Corp.* v. *Commissioner of Internal Revenue,* 106 Fed. (2d) 731, 732, under a materially different statutory provision (Federal Revenue Act of 1934, 48 U. S. Sts. at Large, 680, 711) relating to a tax upon "undistributed adjusted net income" of a corporation. The statute (§ 115a) defined a "dividend" as "any distribution made by a corporation to its shareholders . . . out of its earnings or profits accumulated after February 28, 1913." The court, relying upon and quoting from the *Willcuts* case, held that a distribution by a corporation to its shareholders was "a 'dividend' only to the extent that it exceeded the operating deficit due to losses in prior years." Page 733. Reference was made to *Kinnear*

v. *Commissioner of Internal Revenue*, 36 B. T. A. 153, 155, in which case it was said with respect to distributions for the purpose of taxation that the "rule is that a corporation does not have earnings or profits available for distribution as dividends until impairments of capital or paid-in surplus resulting from operating losses have been restored." See also *Sale* v. *Commissioner of Internal Revenue*, 35 B. T. A. 938, 941.

In the case of *Helvering* v. *Canfield*, 291 U. S. 163, the court apparently recognized the principle stated in the cases just cited but held it inapplicable to the facts before the court. The court was there considering the Federal Revenue Act of 1921 (42 U. S. Sts. at Large, 227) which contained a definition of dividend substantially like that above quoted from the Federal Revenue Act of 1934, and a provision that for the purposes of the act "every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated . . . prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed." § 201. In the case before the court the corporation had a surplus on March 1, 1913, a small profit in 1914, a loss in 1915 and again in 1916, and profits in succeeding years including a part of 1923. The court held that the losses sustained in 1915 and 1916 should be treated as reducing the surplus of March 1, 1913, rather than the profits of the years succeeding 1916 for the purpose of determining the taxability of a dividend in 1923. The court said that the "surplus of March 1, 1913, was the amount of net assets over liabilities including capital stock. When the losses of 1915 and 1916 were suffered, the net assets of March 1, 1913, shrunk accordingly." Page 166. The taxpayers, however, contended that the surplus on March 1, 1913, constituted capital. But the court did not accept this contention, pointing out that the court was "not here concerned with capital in the sense of fixed or paid-in capital, which is not to be impaired, or with the

restoration of such capital where there has been impairment," that "the Congress was careful to arrange its plan so that the right to receive, free of tax, a distribution of surplus accumulated prior to March 1, 1913, should not be exercised in such a fashion as to permit profits accumulated after that date to escape taxation," that nothing was said "as to a restoration of those profits [accumulated prior to March 1, 1913] out of subsequent earnings if the former have been lost," and that what "had been 'accumulated' prior to March 1, 1913, was obviously not immune from the risk of loss." Pages 167–169.

(d) The situation of the corporation in the year 1934 when there were distributions by dividends aggregating $24,000 requires no detailed discussion. At the beginning of the period from December 1, 1933, to November 30, 1934, inclusive, there were no "accumulated profits" or "earned surplus" distribution of which would be taxable under G. L. (Ter. Ed.) c. 62, § 1, subsection (g), and "capital" within the meaning of that subsection was impaired or depleted to the extent at least of $84,468.19 even if prior dividends distributed since January 1, 1930, aggregating $38,216.67, are treated as paid out of "capital" effecting a reduction of such "capital" rather than an impairment thereof. This impairment was not restored during the period from December 1, 1933, to November 30, 1934, but, on the contrary, net losses were sustained aggregating $89,304.65, increasing the impairment to at least $173,772.84, though the dividends distributed during this period aggregating $24,000 be treated as reducing "capital" rather than impairing it. While the dates of the dividends in 1934, and the extent of the impairment of "capital" at those dates respectively, do not appear, on the other facts found there is no reasonable probability that the operations of the corporation prior to such dates, respectively, restored the impairment of "capital" existing on such dates, respectively, and the ultimate finding of the board that the distributions by the dividends were "paid out of capital or paid-in surplus" cannot be set aside on this ground.

8. We think, for the reasons stated, that neither the

dividends in 1933 nor those in 1934 were subject to income tax and that there was no legal error in abating the income taxes assessed upon the taxpayer by reason of such dividends. In the case relating to the tax upon income of the taxpayer for the year 1933 there is to be an abatement of $402.87, and in the case relating to the tax upon income of the taxpayer for the year 1934 there is to be an abatement of $996.82, in each case with interest and costs.

*So ordered.*