FRANCIS P. SEARS & others, trustees, vs. COMMISSIONER
OF CORPORATIONS & TAXATION.

Suffolk.    December 4, 1947. — March 2, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & SPALDING, JJ.

*Taxation*, Income tax.   *Words*, "Capital," "Accumulated profits."

Subsection (g) of G. L. (Ter. Ed.) c. 62, § 1, was designed to make clear
that no income tax was to result from distributions of capital assets,
but that such a tax was to result only from distributions of assets
which had already acquired the status of profits.

Distribution in final liquidation of a corporation of shares of stock in
another corporation which the liquidating corporation had purchased
with capital paid in by its shareholders and which during its
possession had increased in market value was wholly a "distribution
of capital" under subsection (g) of G. L. (Ter. Ed.) c. 62, § 1, and the
increase in market value was not taxable as a distribution of "accu-
mulated profits."

APPEAL from a decision of the Appellate Tax Board.

*L. Withington*, (*C. C. Worth* with him,) for the taxpayers.

*W. G. Perrin*, Assistant Attorney General, (*R. F. Cotter*,
Assistant Attorney General, with him,) for the Commissioner
of Corporations and Taxation.

QUA, C.J.    The trustees under the will of Arthur E.
Childs, hereinafter called the taxpayers, appeal from a
decision by a majority of the Appellate Tax Board refusing
to abate an income tax assessed by the commissioner
against the taxpayers on dividends received by the tax-
payers in liquidation of the American Investment Securities
Company, hereinafter called the securities company, a
Maine corporation, in which the taxpayers held stock.

The decisive facts may be simply stated.  On December
27, 1944, the day of its dissolution, the assets of the securi-
ties company consisted in part of cash on hand which was
the proceeds of the winding up of its business and of the
sale of various securities, and in part of shares of stock
which it held in Columbian National Life Insurance Com-
pany and in Jefferson Standard Life Insurance Company.

In liquidation it distributed the cash pro rata among its shareholders and instead of selling the life insurance stocks and distributing the proceeds it distributed the shares in these two companies in kind pro rata among its own shareholders. The securities company had originally purchased the life insurance stocks out of its own paid in capital contributed by its own shareholders. These stocks had increased in value while in its possession, so that their market value at the time of their distribution in liquidation among the shareholders of the securities company substantially exceeded their original cost to that company. The commissioner assessed to the taxpayers an income tax both upon so much of the distributed cash as represented the taxpayers' proportion of an earned surplus of the securities company and also upon the taxpayers' proportion of the difference between the market value of the insurance stocks when distributed and the sum originally paid for them out of the securities company's paid in capital.

The taxpayers concede that a tax is properly assessable to them with respect to the earned surplus of the securities company, but they contend that an income tax is not assessable to them with respect to a mere increase in value of capital assets of that company which were merely distributed in kind without the actual realization by the company of any profit through a sale or its equivalent.

General Laws (Ter. Ed.) c. 62, § 1, provides that "income" of certain described classes received during the preceding calendar year shall be taxed at the rate of six per cent per annum. Subsection (b) describes as one of the classes of taxable income "Dividends, other than stock dividends paid in new stock of the company issuing the same," on shares in foreign corporations, with exceptions not material in this case. Subsection (g) reads, "No distribution of capital, whether in liquidation or otherwise, shall be taxable as income under this section; but accumulated profits shall not be regarded as capital under this provision." The question is whether the distribution in final liquidation of shares of stock in another corporation which were purchased with paid in capital but which have

increased in market value is wholly a "distribution of capital" or is, to the extent of the increase, a distribution of "accumulated profits."

The commissioner contends that this question has already been determined in his favor. We think it is still open. In *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 262 Mass. 1, it would seem that the question here presented may have been involved as to part of the assets, but the effect of a lack of any actual realization by the corporation of increased value of capital assets through sale or its equivalent was not there stressed in either of the briefs and was not mentioned in the opinion. The question principally discussed was whether profits had become capital by being devoted to capital uses. That was also the principal question discussed in *Moore* v. *Tax Commissioner*, 237 Mass. 574, mentioned in *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation, supra.* In the *Moore* case, however, the distribution was entirely in cash and the court inferred from agreed facts "that the excess of general assets over the capital stock assets represents gains and profits which had accrued from the successful management of the business for many years." 237 Mass. at page 575. In *United States Trust Co.* v. *Commissioner of Corporations & Taxation*, 299 Mass. 296, the exact amount distributed as accumulated profits was found by the board and was not disputed. See 299 Mass. at page 298, and original papers, record, pages 22, 28. The case of *Tilton* v. *Tax Commissioner*, 238 Mass. 596, upon which the board relied, was decided at a time when stock dividends were taxable as income. Some expressions in that case may be thought to aid the commissioner in this case, but whatever may be said of a stock dividend as income (*Tax Commissioner* v. *Putnam*, 227 Mass. 522, 534–536), there was in that case no "distribution" of any assets of the corporation, and, especially in view of later cases, we do not think the *Tilton* case can be considered an authoritative interpretation of G. L. (Ter. Ed.) c. 62, § 1 (g). In the cases of *Lapham* v. *Tax Commissioner*, 244 Mass. 40, and *Follett* v. *Commissioner of Corporations & Taxation*,

267 Mass. 115, the corporation had sold its assets before paying the dividends, and in the latter case the court says that the gains so realized had "become accumulated profits before distribution in liquidation." 267 Mass. at page 119. Practically the same may be said in different circumstances of *Commissioner of Corporations & Taxation* v. *Hornblower*, 278 Mass. 557, and *Wellman* v. *Commissioner of Corporations & Taxation*, 289 Mass. 131. The real issue in those cases was whether the taxpayers had received a dividend in stock or had merely exchanged their stock. We see nothing in any of the cases that prevents us from deciding the issue in this case by interpreting the statute according to ordinary rules of construction in the light of generally accepted principles of income taxation.

When we give to the words of subsection (g) their ordinary meaning, both "capital" and "accumulated profits" must refer to something which the corporation previously had but which it has distributed, and therefore to the status of that thing as capital or accumulated profits *before* distribution. Those words cannot refer to the status of the thing distributed as being capital or accumulated profits in the hands of the stockholder *after* distribution. This is fully recognized in cases decided more recently than those hereinbefore cited. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 298 Mass. 263, 266. *Commissioner of Corporations & Taxation* v. *Filoon*, 310 Mass. 374, 380. *Flint* v. *Commissioner of Corporations & Taxation*, 312 Mass. 204, 205–206. *Commissioner of Corporations & Taxation* v. *Church*, 318 Mass. 268, 269. In our opinion the four cases last cited preclude us from treating the distribution of the insurance stocks by way of dividend as in itself a realization by the securities company of a profit arising from their increased value. This accords with what seems to be the better view as to the construction of the words "earnings or profits" in a provision of the Federal act which is analogous to subsection (g). U. S. C. (1940 ed.) Title 26, § 115 (a), as amended by Act of June 25, 1947, 61 U. S. Sts. at Large, 179. Mertens, Law of Federal Income Taxation, §§ 9.49, 9.50, 9.68.

In the *Filoon* case it was further decided that the word "capital" in subsection (g) meant "property invested in the corporation by the stockholders" and was not synonymous with "legal capital." 310 Mass. at page 382. In the case at bar the insurance stocks that were distributed in kind were wholly purchased with money invested in the securities company by its shareholders. No earnings or profits of that company went into these stocks. After the insurance stocks were purchased the securities company continued to hold them until they were distributed as a dividend in liquidation. The income from these stocks may have represented profits, but the stocks themselves remained capital to the end. All that happened to them was that they increased in market value. Never during the existence of the securities company was that increased value turned into "profits" by a sale or otherwise. When accurately used, the word profit as defined in the dictionaries and by judicial decision carries with it the idea of the acquisition of something new, different, and separate from the original investment out of which it arises. It does not include mere appreciation in market value. *Gray* v. *Darlington*, 15 Wall. 63, 66. *Tootal Broadhurst Lee Co. Ltd.* v. *Commissioner of Internal Revenue*, 30 Fed. (2d) 239, 240. *Hoffman* v. *United States*, 53 Fed. (2d) 282, 286. It commonly involves dealings of some kind and a shifting of assets from one form to another. Subsection (g) was designed to make clear that no income tax was to result from distributions of capital assets, but that such a tax was to result only from distributions of assets which had already acquired the status of profits. This is entirely consistent with a general principle of income taxation that mere increase in the value of property is not income, and that such increase must be realized by sale or its equivalent before there is income to tax. *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 528, 535. *Bingham* v. *Commissioner of Corporations & Taxation*, 249 Mass. 79, 81. *Bryant* v. *Commissioner of Corporations & Taxation*, 291 Mass. 498, 501. *Commissioner of Corporations & Taxation* v. *Filoon*, 310 Mass. 374, 385. *Commissioner of Corporations & Taxation* v. *Williston*, 315

Mass. 648, 649–650, and cases cited. *Eisner v. Macomber,* 252 U. S. 189, 207. *Palmer v. Commissioner of Internal Revenue,* 302 U. S. 63, 69. See Paul, Selected Studies in Federal Taxation, Second Series, 149–199. This principle has been applied in cases of distributions in kind by a corporation to its stockholders. *General Utilities & Operating Co. v. Helvering,* 296 U. S. 200. *Commissioner of Internal Revenue v. Timken,* 141 Fed. (2d) 625, 630. *Dean v. Commissioner of Internal Revenue,* 9 U. S. T. C. 256, 265. *Sager v. Commissioner,* 3 T. C. M. 1176. *Grandin v. Commissioner,* 4 T. C. M. 1031. In *State v. Cary,* 191 Wis. 153, it was held that under a statute similar to ours a dividend declared upon an appreciation of assets was not taxable.

Moreover, it would seem that the inclusion in "accumulated profits" of unrealized appreciation in market value of capital assets might lead to serious complications. If such unrealized appreciation must be included in "accumulated profits," would it not follow that unrealized depreciation in such assets must be deducted from "accumulated profits"? See *Commissioner of Corporations & Taxation v. Filoon,* 310 Mass. 374, 386. If this is so, might it not frequently be necessary, even in cases of ordinary cash dividends of a going corporation, to appraise its capital assets in order to determine whether there had not been sufficient depreciation in capital assets to wipe out the "accumulated profits" from which, supposedly, the dividend was paid? It does not seem that the Legislature could have intended that the "accumulated profits" of subsection (g) would vary from day to day with fluctuations in the market value of capital assets.

In view of what has been said we think it must now be recognized that the statement in *United States Trust Co. v. Commissioner of Corporations & Taxation,* 299 Mass. 296, at page 303, "It is settled in this Commonwealth that under G. L. (Ter. Ed.) c. 62, § 1 (g), the sum taxable is the excess of the amount distributed as dividends over the par value of the stock," is subject to the qualifications (1) that under subsection (g) "capital" "means property invested in the corporation by the stockholders" (*Commis-*

*sioner of Corporations & Taxation* v. *Filoon,* 310 Mass. 374, 382) and not necessarily the par value of the stock, and (2) that mere appreciation in the market value of capital assets never realized by the corporation still pertains to "capital" and is not "accumulated profits."

The parties have agreed upon the computation of the abatement.   In accordance with their agreement

*Abatement is granted in the amount of $26,735.26 with costs.*