PERLEY G. FLINT *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

Suffolk. May 6, 1942. — September 9, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Tax*, On income, Repayment after abatement. *Corporation*, Capital, Reduction of capital stock. *Words*, "Capital," "Accumulated profits."

A depletion of "capital" of a Massachusetts corporation caused by an excess of operating losses over prior "accumulated profits" was not made good merely by the creation of a "capital surplus" through a reduction of capital stock in accordance with statutory provisions unaccompanied by an actual return of "capital" to the stockholders, whether the losses were accumulated before or after such reduction; and a dividend paid in such circumstances was out of "capital" within § 1 (g) of G. L. (Ter. Ed.) c. 62, and was not subject to an income tax.

Under G. L. (Ter. Ed.) c. 58A, § 13, as amended; c. 62, § 46, as amended, an abatement of an income tax includes interest on the amount of the tax paid and costs, if awarded, without a specific order therefor.

APPEAL from a decision of the Appellate Tax Board.

*A. L. Newton,* (*L. Kaplan* with him,) for the taxpayer.

*R. T. Bushnell,* Attorney General, & *H. E. Magnuson,* Assistant Attorney General, for the Commissioner of Corporations and Taxation, submitted a brief.

FIELD, C.J.   The question presented by this appeal from a decision of the Appellate Tax Board is whether a dividend amounting to $3,255 received by Perley G. Flint, a resident of Massachusetts — herein referred to as the taxpayer — in the year 1934 upon certain shares of stock held by him in the Field and Flint Co. — herein referred to as the corporation — was taxable as income under the provisions of the income tax law.   See St. 1933, c. 307, § 9; St. 1935, c. 489, § 1.   If within the meaning of the governing statute this dividend was a "distribution of capital" it was not taxable, but if it was a distribution of "accumulated profits" it was taxable.   G. L. (Ter. Ed.) c. 62, § 1, subsection (g).   The Appellate Tax Board decided that the dividend in question was, in part, a "distribution of capital" and granted a partial abatement.   The taxpayer, however, contends that the entire dividend was such a distribution and that the entire tax upon such dividend should be abated.

In the recent case of *Commissioner of Corporations & Taxation* v. *Filoon,* 310 Mass. 374 — decided after the decision by the Appellate Tax Board in the present case — G. L. (Ter. Ed.) c. 62, § 1, subsection (g), was interpreted and applied to the facts found by the Appellate Tax Board in that case.   The decision of the present case depends upon the application of subsection (g) as interpreted in that case to the facts found by the Appellate Tax Board in the present case.   The question with respect to the source of the distribution by dividend is to be determined from the standpoint of the corporation making the distribution.   Page 377.   (a) The word "capital" as used in subsection (g) "means property invested in the corporation by the stockholders" whether representing " 'legal capital,' that is, property sufficient to balance the capital stock liability," or "paid in surplus" or "capital surplus" in any form.

Pages 382–383.   (b) The words "accumulated profits" mean "earned surplus" or "undivided profits" of the corporation, and represent "property earned by the corporation as distinguished from property invested therein by the shareholders."   Page 385.   (c) "Such 'accumulated profits', necessarily take into account losses as well as gains in the course of operations of the corporation during the period for which its 'accumulated profits' are to be ascertained, that is, the period during which they were accumulated."   Page 386.   (d) If at any date losses exceeded prior "accumulated profits" the deficiency in such profits — that is, the excess of losses over prior "accumulated profits"— must be made good before the corporation can be said to have "accumulated profits."   Page 390.   And it does not follow from the fact that a corporation sustaining losses in excess of its "accumulated profits" or "earned surplus" thereby, in effect, depletes or impairs its "capital," in the sense in which that word is used in subsection (g), "that such losses can no longer properly be considered in determining whether as of a subsequent date the corporation has 'accumulated profits' or 'earned surplus.' "   Page 391.

According to the findings of the Appellate Tax Board the "capital" of the corporation within the meaning of said subsection (g), prior to the transactions hereinafter outlined, was $970,700 represented by fully paid capital stock in that amount.   The "legal capital" of the corporation and its capital stock liability were, therefore, of this amount.   The corporation, however, suffered losses, and the accumulated net losses at the end of the year 1928 amounted to $210,027.60.   By reason of the accumulated losses the corporation at the end of that year reduced its capital stock in accordance with statutory provisions to $700,000, a reduction of $270,700.   There is no finding that this reduction was accompanied by any return of capital to the shareholders.   At the end of the year 1931 a further reduction of capital stock was made in accordance with statutory provisions to $400,000.   This reduction of capital stock by the amount of $300,000 was accompanied by a return of capital to the shareholders of $107,100, and

the remaining $192,900 according to the finding of the Appellate Tax Board created a "capital surplus item, so-called," of $192,900.

At the close of the year 1933 there were accumulated net losses amounting to $222,758.92, and the net worth of the corporation was $594,911.08 — $194,911.08 in excess of the capital stock liability. During the year 1934 the earnings of the corporation amounted to $26,815.17, and the corporation distributed by dividend to its shareholders $36,075 which includes the amount thereof paid to the taxpayer involved in the present case. At the end of the year 1934 the accumulated net losses of the corporation amounted to $195,943.75, and the net worth of the corporation was $585,651.25 — $185,651.25 in excess of its capital stock liability.

The Appellate Tax Board held that, of the dividend amounting to $36,075, $7,248.75 — the amount by which the "capital surplus item" resulting from the reduction of capital stock in 1931 was greater than the excess of the net worth of the corporation at the end of the year 1934 over its capital stock liability — was a distribution of capital not subject to taxation as income of the shareholders, but that the remaining $28,826.25 — the sum of the increase in surplus from the last reduction of capital stock in 1931 to the end of 1933 ($2,011.08) and the earnings of the corporation in the year 1934 ($26,815.17) — was not such a distribution and was subject to taxation as income in the hands of the shareholders. The taxpayer contends that this decision is erroneous as matter of law on the facts found and that the entire amount of the dividend was a distribution of capital and, consequently, that no part of this amount was subject to taxation as income.

The ground of the decision of the Appellate Tax Board was that the "reduced capital [of the corporation] . . . and any actual surplus resulting from the last readjustment [the reduction of capital stock in 1931] constituted the fund with regard to which earnings and distributions were to be judged." The Appellate Tax Board in its opinion recognized the principle later laid down by this court in the

*Filoon* case, already stated in this opinion, that if at any date losses exceeded prior "accumulated profits" the amount of such excess must be made good before the corporation can be said to have "accumulated profits," but held this principle inapplicable to the present case by reason of the fact that the reductions of the capital stock of the corporation in each instance — in 1928 and 1931 — were made in accordance with applicable statutory provisions. See G. L. (Ter. Ed.) c. 156, §§ 41, 42, 45. The Appellate Tax Board in its opinion in the present case said: "The corporation and its officers in their relations to the stockholders and the public were to be judged by the reduced amount of the capital, and were under no obligation to provide any greater amount or to restore any former shrinkage. The action taken by the stockholders was an agreement voluntarily entered into, with the approval of the Commonwealth, to carry on the corporate business with a reduced authorized capital of $400,000, and with its prior capital losses wiped out."

The Appellate Tax Board was in error in ruling that the reductions of capital stock took the case out of the general principle requiring that the excess of losses over prior "accumulated profits" be made good before the corporation could be said to have "accumulated profits" — subject to income taxation in the hands of the shareholders when distributed — so that as stated by the Appellate Tax Board the "reduced capital" and any "actual surplus" resulting from the reduction of capital stock "constituted the fund with regard to which earnings and distributions were to be judged" for the purpose of determining whether distributions were out of "capital" or "accumulated profits" within the meaning of subsection (g). Doubtless the conclusion stated by the Appellate Tax Board is true for some purposes. Such a reduction of capital stock — not accompanied by a return of property to the shareholders — has the effect of transforming "legal capital" into "capital surplus," and it may well be that the right of the corporation to pay dividends may be affected by such a transformation, though no such question is here involved. See

*Smith* v. *Cotting*, 231 Mass. 42, 48; *Commissioner of Corporations & Taxation* v. *Filoon*, 310 Mass. 374, 391. But a distribution by dividends of such "capital surplus," sometimes described as "reduction surplus," is a distribution of "capital" within the meaning of subsection (g), and the principle continues applicable, notwithstanding the reduction of capital stock, that a deficiency in "capital" — the "property invested in the corporation by the stockholders" — must be made good before there can be any "accumulated profits." If this were not true, the shareholders receiving dividends, before the deficiency in "accumulated profits" had been made good, would be receiving, in the guise of "accumulated profits" subject to income taxation, property that had been invested by shareholders in the corporation and not earnings of the corporation representing an increase in the wealth of the corporation. See *Commissioner of Corporations & Taxation* v. *Filoon*, 310 Mass. 374, 386. The present case with respect to the effect of a reduction of capital stock is governed by the *Filoon* case.

It is suggested that the present case is distinguishable from the *Filoon* case on the ground that in the present case the reductions of capital stock were made in accordance with statutory requirements. Indeed, the Appellate Tax Board in reaching its decision in this case distinguished on this ground its own decision in the *Filoon* case — which was in substance affirmed by this court after the decision of the Appellate Tax Board in the present case. But the cases are not to be distinguished on this ground. The record in the *Filoon* case did not show in express terms either that the reduction of capital stock in that case was made in accordance with statutory requirements or that it was not so made. The record showed merely that "the par value of the 3,000 shares of common stock was reduced from $100 to $50 per share." In this state of the record it was to be assumed that the reduction of capital stock was made legally in accordance with statutory authorization, and this court in the *Filoon* case dealt with this reduction on that assumption.

On principle, however, a reduction of capital stock in accordance with statutory authorization, when not accom-

panied by an actual return of "capital" to the shareholders, is not in its nature a return of "capital" to the shareholders. The shareholders, by assenting to a reduction of capital stock, thereby assent to a reduction of "legal capital," but do not assent to a reduction of "capital," within the meaning of subsection (g), without an actual return of "capital" to them. And the statutes contemplate that capital stock may be reduced without such a return. See G. L. (Ter. Ed.) c. 156, §§ 41, 45; *Commonwealth* v. *United States Worsted Co.* 220 Mass. 183, 185. Ordinarily an increase of the capital stock of a corporation imports an increase of the "capital" of such corporation. See *Hood Rubber Co.* v. *Commonwealth*, 238 Mass. 369, 371; *Olympia Theatres, Inc.* v. *Commonwealth*, 238 Mass. 374, 377. And this is the effect, under our decisions, of an increase of capital stock accompanied by a stock dividend payable out of "accumulated profits," on the theory that such a dividend is a distribution of such profits and a reinvestment of the amount thereof in the corporation, "constituting not only an increase of the 'legal capital' of the corporation but also an increase of its 'capital' in the sense in which the word is used in G. L. (Ter. Ed.) c. 62, § 1, subsection (g)." *Commissioner of Corporations & Taxation* v. *Filoon*, 310 Mass. 374, 384–385, and cases cited. But an increase of capital stock does not always import an increase of the "capital" of the corporation. Such an increase of capital stock may be made for the purpose of capitalizing surplus of the corporation. G. L. (Ter. Ed.) c. 156, § 16. *Mitchell* v. *Mitchell, Woodbury Co.* 263 Mass. 160, 166. But if such surplus is "capital surplus," though the "legal capital" of the corporation is increased, there is no increase of the "capital" of the corporation within the meaning of said subsection (g). The "legal capital" of the corporation by being so increased is thereby brought more nearly into conformity with the "capital" of the corporation. On the other hand, when the "capital" of the corporation has been depleted by losses, a reduction of the capital stock of the corporation, without actual return of capital to the shareholders, although it may bring the "legal capital" of the corporation more nearly into

conformity with the net worth of the corporation, does not reduce its "capital." Such a transaction does not, in truth, amount to a return of "capital" to the shareholders. And it would be an unnatural interpretation of their action in assenting to the reduction of capital stock to regard such assent as amounting to an agreement by them that the reduction of capital stock is to be treated for the purposes of income taxation as a return of "capital" to them. Yet this would be the substance of the agreement of the shareholders, attributed to them by the Appellate Tax Board, "to carry on the corporate business . . . with its prior capital losses wiped out" if the agreement were to affect the taxability of dividends. We think no agreement of this nature on the part of the shareholders can rightly be implied from their assent to the reduction of capital stock. Consequently, we do not consider the effect upon the taxability of dividends of such an agreement if actually made.

It is also suggested that the present case is distinguishable from the *Filoon* case on the ground that in that case, unlike the present case, the "accumulated net losses" were not accumulated before the reduction of capital stock. But the cases are not to be distinguished on this ground. The record in the *Filoon* case showed that the capital stock of the corporation there involved was reduced on some date within a period of about three years during which the losses were accumulated. But the record did not show whether any part of these losses was accumulated before the reduction of the capital stock. Since, however, as has already been pointed out, a reduction of capital stock does not have the effect, for the purpose of determining the amount of the "capital" of the corporation, of wiping out prior accumulated losses, it is immaterial whether the losses are accumulated before or after the reduction of capital stock.

The Appellate Tax Board in the present case treated one or both of the reductions of capital stock as a "reorganization or readjustment, by whatever term it may be designated," of the corporation. The word "readjustment" has no particular significance. And we are not here concerned with the meaning of "reorganization" as used in any spe-

cific statute, as for example, G. L. (Ter. Ed.) c. 62, § 5, subsection (c) as amended, applicable to the income tax on gains from exchanges of shares, or with the question whether for the purpose of any specific statute either of the reductions of capital stock amounted to a reorganization of the corporation. The word "reorganization" is sometimes used with reference to a change in the corporate structure falling short of a change in the identity of the corporation. See *Ladies' Collegiate Institute* v. *French*, 16 Gray, 196, 201. Neither of the reductions of capital stock here involved resulted in a reorganization of the corporation whereby the identity of the corporation was changed by terminating the existence of the original corporation and bringing into existence a new corporation as of the date of the reduction of capital stock. The situation in this respect is materially different from the situation in *Abbot* v. *Waltham Watch Co.* 260 Mass. 81. The effect of a change in the corporate structure — where, as here, there is no change in the identity of the corporation — upon the taxability of dividends of the corporation depends upon the nature of the change in the corporate structure and not upon the propriety of a characterization of such change as a "reorganization" of the corporation. The nature of the changes in corporate structure here involved has already been discussed in this opinion and the conclusion reached — where there was no return of "capital" to the shareholders — that they were not of such a nature as to reduce the "capital" of the corporation. Since there was no change in the identity of the corporation, the effect upon the taxability of dividends of a change in identity of a corporation need not be discussed.

It follows that the decision of the Appellate Tax Board was based upon an erroneous ruling of law, and the question remains whether the case should be remanded for further findings of fact or should be disposed of on the findings already made. We reach the latter conclusion. No contention is made that the "capital" of the corporation was reduced so as to render taxable any part of the dividend here in question unless by reason of the reductions of its capital stock here considered. While no other aspect of

the case was specifically considered in the findings of the Appellate Tax Board, its general findings — detailed analysis of which is not required — necessarily import that there was no such reduction of "capital" by return of "capital" to the shareholders that the property of the corporation at the time of the dividend in question to any extent represented "accumulated profits" the distribution of which would constitute a taxable dividend.

The tax assessed upon the taxpayer by reason of the dividend in question amounted to $167.74, and this amount with interest of $3.53 has been paid. This entire amount must be abated. And costs are awarded against the commissioner. Provision for repayment to the taxpayer of the amount so abated, that has been paid, with interest thereon at the rate of six per cent per annum from the time when the tax was paid, and costs, if awarded, is made by statutes. G. L. (Ter. Ed.) c. 58A, § 13, as amended; c. 62, § 46, as amended. Notwithstanding what was said in *Commissioner of Corporations & Taxation* v. *Tousant*, 309 Mass. 84, 90, no specific order for such repayment and for payment of interest and costs need be made by the Appellate Tax Board or by this court, since without such an order the statutory provisions require such repayment and payment of interest and costs, if awarded, when abatement is granted. Compare, however, as to local taxes, G. L. (Ter. Ed.) c. 59, § 64, as amended.

*Abatement is granted in the amount of $171.27,*
*with costs.*