COMMISSIONER OF CORPORATIONS AND TAXATION *vs.*
JOHN H. C. CHURCH.

Suffolk.    April 4, 1945. — May 8, 1945.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Taxation,* Income tax.    *Corporation,* Capital, Dividend.    *Words,*
"Capital."

Accumulated profits of a corporation represented by a stock dividend are
thereby transformed into, and must thereafter be included in, "capital"
of the corporation in the sense in which that word is used in G. L.
(Ter. Ed.) c. 62, § 1 (g), as meaning the property invested in the cor-
poration by the stockholders.

A cash dividend, paid by a corporation at a time when its capital, com-
puted as including property represented by a previous stock dividend,
was impaired by losses less in amount than the amount of the stock
dividend, was a "distribution of capital" within G. L. (Ter. Ed.) c. 62,
§ 1 (g), even if the stock dividend had been distributed out of accumu-
lated profits.

APPEAL from a decision by the Appellate Tax Board.

The case was submitted on briefs.

*C. A. Barnes,* Attorney General, *& W. G. Perrin,* Assist-
ant Attorney General, for the Commissioner of Corpora-
tions and Taxation.

*F. M. Myers,* for the taxpayer.

FIELD, C.J.    The commissioner of corporations and taxa-
tion, herein referred to as the commissioner, assessed an
income tax upon John H. C. Church, herein referred to as
the taxpayer, upon the sum of $4,900 distributed to the
taxpayer in the year 1941 by Monument Mills, a Massa-
chusetts corporation, herein referred to as the corporation.
The taxpayer applied to the commissioner for an abate-
ment.    The abatement was denied and the taxpayer ap-
pealed to the Appellate Tax Board.    The Appellate Tax
Board made findings of fact, decided in favor of the tax-
payer, and granted an abatement.    The commissioner ap-
pealed to this court.

The matter for determination is whether the distribution of the sum of $4,900 by the corporation to the taxpayer was a "distribution of capital," or of "accumulated profits" within the meaning of G. L. (Ter. Ed.) c. 62, § 1 (g), providing that "No distribution of capital, whether in liquidation or otherwise, shall be taxable as income under this section; but accumulated profits shall not be regarded as capital under this provision." The Appellate Tax Board decided that the distribution was a "distribution of capital" within the meaning of G. L. (Ter. Ed.) c. 62, § 1 (g), and consequently was not taxable. The Appellate Tax Board was right.

General Laws (Ter. Ed.) c. 62, § 1 (g), was considered recently in *Commissioner of Corporations & Taxation* v. *Filoon*, 310 Mass. 374, and in *Flint* v. *Commissioner of Corporations & Taxation*, 312 Mass. 204, where its language was interpreted and the principles governing its application were stated and applied. These principles were stated in the *Flint* case (pages 205–206), with references to pages in the opinion in the *Filoon* case, as follows: "The question with respect to the source of the distribution by dividend is to be determined from the standpoint of the corporation making the distribution. Page 377. (a) The word 'capital' as used in subsection (g) 'means property invested in the corporation by the stockholders' whether representing '"legal capital," that is, property sufficient to balance the capital stock liability,' or 'paid in surplus' or 'capital surplus' in any form. Pages 382–383. (b) The words 'accumulated profits' mean 'earned surplus' or 'undivided profits' of the corporation, and represent 'property earned by the corporation as distinguished from property invested therein by the shareholders.' Page 385. (c) 'Such "accumulated profits" necessarily take into account losses as well as gains in the course of operations of the corporation during the period for which its "accumulated profits" are to be ascertained, that is, the period during which they were accumulated.' Page 386. (d) If at any date losses exceeded prior 'accumulated profits' the deficiency in such profits — that is, the excess of losses over prior 'accumu-

lated profits' — must be made good before the corporation can be said to have 'accumulated profits.' Page 390. And it does not follow from the fact that a corporation sustaining losses in excess of its 'accumulated profits' or 'earned surplus' thereby, in effect, depletes or impairs its 'capital,' in the sense in which that word is used in subsection (g), 'that such losses can no longer properly be considered in determining whether as of a subsequent date the corporation has "accumulated profits" or "earned surplus."' Page 391."

In the present case the Appellate Tax Board found the following facts with respect to Monument Mills, the corporation making the distribution: The corporation "was organized April 18, 1850, with a paid in capital of $50,000, divided into 500 shares with a par value of $100 per share. A stock dividend of $450,000 was distributed to the shareholders in 1912. There were further distributions of stock dividends amounting to $500,000 in 1915 and $500,000 in 1917, so that in 1941 the capital stock of the corporation was $1,500,000, consisting of $50,000 paid in by the shareholders and $1,450,000 from stock dividends. . . . [It does not appear, unless by implication, whether these stock dividends were distributed out of "paid in surplus" or out of "accumulated profits," but there is no finding indicating that the corporation ever had any "paid in surplus." However, the source of these stock dividends is immaterial for the purposes of the present case.] On January 1, 1941, the capital of the corporation was impaired to the amount of $442,353.34. . . . During 1941, the corporation's net earnings were $117,765.24 and the impairment of capital was reduced thereby to $324,588.10. . . . [It is apparent that the word "capital" is here used in the sense in which it is used in subsection (g) as meaning property invested in the corporation by the stockholders including property dealt with by the stock dividends. It is also apparent that the words "impaired" and "impairment" are here used in the strict sense of impairment by losses rather than with the less accurate meaning of reduction by return of "capital" to stockholders. At any rate, there is no finding indicating

the contrary, and the appeal of the commissioner does not "set out separately and particularly" any error of law touching this matter. G. L. (Ter. Ed.) c. 58A, § 13, as appearing in St. 1933, c. 321, § 7, as amended.] Dividends distributed during the year amounted to $55,587, of which . . . [the taxpayer] received $4,900. . . . [No question with respect to the legality of these dividends is presented]."

The contention of the commissioner is that property represented by the stock dividends should not be included in the "capital" of the corporation, as the word is used in G. L. (Ter. Ed.) c. 62, § 1 (g), meaning the property invested in the corporation by the stockholders. This contention cannot be sustained.

The subject of the treatment of stock dividends in determining the "capital" of a corporation under G. L. (Ter. Ed.) c. 62, § 1 (g), was dealt with in *Commissioner of Corporations & Taxation* v. *Filoon*, 310 Mass. 374, 384–385, in the following language: "On the other hand the 'capital' of the corporation in this sense [that is, in the sense of the investment in the corporation by the stockholders], as well as its 'capital' in the narrow sense of 'legal capital,' may be increased by a stock dividend declared out of 'accumulated profits.' Such a dividend, under our decisions, is a distribution of such profits to the shareholder, constituting income of such shareholder. Whether or not such income is taxable depends upon the applicable statute, which has been changed from time to time. See *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 534–536; *Brink* v. *Commissioner of Corporations & Taxation*, 299 Mass. 280, 283–284; *Commissioner of Corporations & Taxation* v. *Morgan*, 306 Mass. 305. And the effect of a stock dividend is to capitalize the income so distributed, whether or not subject to taxation under the applicable statute. As was said of a stock dividend in the *Putnam* case, 'In essence the thing which has been done is to distribute a symbol representing an accumulation of profits, which instead of being paid out in cash is invested in the business . . . In this aspect of the case the substance of the transaction is no different from what it would be if a cash dividend had been declared with the

privilege of subscription to an equivalent amount of new shares.' Page 535. The effect of the transaction from the standpoint of the corporation is to distribute accumulated profits to the shareholders and to receive from such shareholders the amount thereof as an investment by them of their property, constituting not only an increase of the 'legal capital' of the corporation but also an increase of its 'capital' in the sense in which the word is used in G. L. (Ter. Ed.) c. 62, § 1, subsection (g)."

We see no reason to modify the views expressed in the *Filoon* case with respect to the treatment of stock dividends. The views there expressed are applicable to and decisive of the present case. See also *Flint* v. *Commissioner of Corporations & Taxation*, 312 Mass. 204, 210.

The commissioner, however, attempts to distinguish the present case from the *Filoon* case on the ground that "in that case capital in the sense of the original paid-in investment of the shareholders was impaired at the time of payment of the cash dividends." With respect to one of the tax years involved in that case (1932–1933), this statement is not borne out by the opinion in the case. There was a stock dividend of $100,000. The impairment of "capital" — including property representing the stock dividend — at the end of this tax year was "at least . . . $84,468.19," an amount less than the amount of the stock dividend (pages 394–395). Whether the impairment was greater than this amount depends upon whether certain cash dividends were paid out of capital and, if so paid, were to be treated as impairing "capital" rather than as reducing "capital" by a return of "capital" to stockholders — a point that was not decided since the decision that the property dealt with by the stock dividend was included in "capital" rendered such a decision unnecessary (pages 388, 394). The decision of the *Filoon* case rested on the ground that the property dealt with by the stock dividend was included in "capital" and that, with such property included in "capital," "capital" was impaired. The present case, therefore, so far as appears, is not distinguishable, in fact, from the *Filoon* case on the ground suggested. But, even if, in the

*Filoon* case, "the original paid-in investment of the share-holders was impaired," this fact would not furnish a ground for applying different principles in the present case from those stated in the *Filoon* case as already quoted in this opinion.

The commissioner argues that, unless "the cash dividends subsequently paid out of the accumulated profits that have been thus capitalized through stock dividends are taxed, . . . income from the same source, cash and stock dividends, would not be equally taxed as required by the Forty-fourth Amendment to the Constitution of Massachusetts . . . [since the] stockholder would be receiving accumulated profits in the one case tax free and in the other subject to taxation." This argument begs the question to be decided, namely, whether such cash dividends are paid out of "capital" or out of "accumulated profits." If, as we hold, the effect of the payment of a stock dividend out of "accumulated profits" is to transform such "accumulated profits" into "capital," the property so distributed loses its character as "accumulated profits," and a stockholder thereafter receiving a cash dividend out of property so capitalized would not be receiving "accumulated profits."

The case presents no question as to the taxability of the stock dividends themselves. It is to be observed, however, that the first two stock dividends were paid before the passage of the income tax statute, May 26, 1916, St. 1916, c. 269, and that the third stock dividend was paid when stock dividends were taxable. St. 1916, c. 269, § 2 (b). *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 534–536. *Commissioner of Corporations & Taxation* v. *Morgan*, 306 Mass. 305, 311.

The tax assessed upon the taxpayer by reason of the dividend in question amounted to $332.22. This amount with interest of $4.87 was paid. The total amount of tax and interest must be abated. And costs are awarded against the commissioner. See *Flint* v. *Commissioner of Corporations & Taxation*, 312 Mass. 204, 213.

> *Abatement is granted in the amount of $337.09, with costs.*