Joseph P. Lawrence et ux.

*v.*

Alfred T. MacFarland, etc.

354 S. W. 2d 78.

(*Nashville*, December Term, 1961.)

Opinion filed February 8, 1962.

PHILLIPS, GULLETT & STEELE, DEARBORN, BERRY & WARNER, Nashville, for appellants.

GEORGE F. McCANLESS, Attorney General, MILTON P. RICE and DAVID M. PACK, Assistant Attorneys General, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

As a result of a holding of this Court in *Evans v. McCabe,* 164 Tenn. 672, 52 S.W.2d 159, 617, that a general income tax statute was unconstitutional by reason of the provisions contained in Section 28 of Article 2 of our Constitution that ''The Legislature shall have power to levy a tax upon incomes derived from stocks and bonds that are not taxed ad valorem'', the Legislature enacted what is known as the Hall Income Tax Law. This statute is a limited income tax statute and taxes incomes derived by way of dividends from stocks or by way of interest upon bonds. Section 67-2601 et seq., T.C.A.

This case, for the first time, presents the question of whether or not the amounts received by owners of shares in the Massachusetts Investors Trust specifically in this case or from regulated investment companies, which amounts to pro rata distributions of gains realized by said concern upon disposition of securities held in its portfolio (under the Federal Income regulations, commonly called capital gains) are subject to income taxation under the Hall Income Tax Law.

During the year 1959 the appellants, who were the owners of certain shares of stock in the Massachusetts Investors Trust, received from that Trust in excess of $3,000.00 representing a pro rata distribution of amounts realized by the Trust as dividends and interest upon the shares of stock and bond holdings in its portfolio. No question is raised as to the tax which was voluntarily paid on this sum. In the same year the complainants received from this Trust 78 additional shares thereof, plus a cash balance of $17.52, which represented a pro rata distribution of gains realized by the Trust upon the sale of securities held in its portfolio. The tax on

this last item, which was slightly in excess of $63.00, was paid under protest and this suit was brought for the purpose of recovering this tax. The record shows the appellants elected, as they had a right to do, to take their pro rata share of gains in additional shares of the Trust rather than in cash.

The Massachusetts Investors Trust is regulated in its operation by the Investment Company Act of 1940, 15 U.S.C.A. sec. 80a—1 et seq. It engages in no business other than buying, selling and holding securities of other companies and government obligations. It maintains two accounts, which it denominates as an "income account" and a "principal account". The "income account" contains amounts realized by the Trust from dividends and interest upon its holdings, while the "principal account" contains amounts realized from the sale of securities. Out of the "income account" are paid to the shareholders what are denominated as "dividend distributions", while out of the "principal account" are paid what are called "capital gain distributions".

"The per share net asset value" of the value of the Trust's holdings are arrived at by taking the aggregate value of all the Trust's holdings and dividing them by the number of shares outstanding. This value, that is the "per share net asset value" fluctuates with the market value of the Trust's security holdings. This figure, that is the "per share net asset value", plus commission to a salesman represents the price of a share in the Trust to the purchaser. These shares after being purchased in this Trust may be disposed of only to the Trust. Of course, this may be done through an intermediary.

No question of the tax is involved with reference to the dividends and interest, which was recognized as paid out as income. The argument here is that the additional 78 shares of stock and small amount of money were paid by reason of gains on the sale of securities, which were regarded by M.I.T. as the "principal item" rather than an "income item". According to this record this stock came from what is denominated by a witness herein as "capital gains distribution" rather than from any dividend or interest on the stocks that they had but was derived from the sale of certain capital assets wherein the sale produced in excess of what the cost of the asset was in the beginning. This company had carried this in an account which is known as the "principal account" and then they made the distribution therefrom. This brings us to what is necessary under the tax statute of this State for a proper determination.

Section 67-2602, T.C.A., levies an income tax of six (6%) percent per annum "on incomes derived by way of dividends from stocks * * * of each person, * * * who received, or to whom accrued, or to whom was credited during any year income from the sources above enumerated except as hereafter provided."

The preceding Section of the Code, sec. 67-2601, T.C.A., is a section defining the terms in this Act. Under this Section the term "stocks" for the purpose of the statute is defined "to mean shares of stock issued by corporations chartered and organized under the laws of the state of Tennessee, or of any other state, or of the United States, or of any foreign government, and all interests in partnerships, associations or trusts represented by transferable evidence of such interest."

The factual situation in the instant case was testified to by an expert in this language: "and it is out of that principal account that the shareholders are paid the residual left over at the end of the accounting period, at the end of the year, because the realized gains offset whatever realized losses they may have and it is purely discretionary with the shareholder as to whether he accepts cash or whether he re-invests, so to speak, by maintaining his position in that fund to the ownership of additional shares." This expert then concludes that the fund in the instant case is not a dividend and does not come from earned surplus but is a part of the capital. He in making this explanation says there is "a difference in the philosophy" on this question.

An exception which was referred to in sec. 67-2602, the levying statute above quoted from, is contained in sec. 67-2609, thus:

"No distribution of capital by stock dividend, or liquidation or otherwise, shall be taxed as income; but earned surplus shall not be considered as capital, and shall be taxed as income when and in whatever manner it may be distributed, irrespective of when it was earned."

The Chancellor concluded that these 78 shares received by the shareholder came from earned surplus and did not constitute a distribution of capital stock and thus that it was taxable. The Chancellor likewise concluded after having reached this conclusion that it was unnecessary for him to rule on the constitutional question hereinafter to be discussed.

Certain principles with regard to this interpretation and application of the Hall Income Tax and statutes

hereinabove referred to have been before this Court on one or two occasions, and specifically in *First National Bank of Memphis v. McCanless,* 186 Tenn. 1, 207 S.W.2d, 1007, to the effect and holding that the tax statute was intended to provide for an assessment and collection of taxes on property upon which there was no ad valorem tax paid. In other words Section 67-2607, T.C.A., expressly excludes the tax as fixed by the Act here on property which pays ad valorem tax. It is also held in this same case that it was the intention of the Legislature in enacting this law, the Hall Income Tax Law, to tax the total amount of revenue produced by stocks and bonds and that in passing the law the Legislature clearly did not intend in the administration of the law that the administrators thereof have the burden of tracing dividends to the source—the contrary is true.

■■ We, of course, must keep in mind that in our interpretation of the Act we shall look at the transactions with respect to their substantial and practical effect rather than to the form in which the M.I.T. handled the matter. In doing so, we must give the word "dividends" its ordinary meaning unless the specific terms of the statute applicable to the tax specify otherwise. Whether or not the distribution made by dividends is from capital or profits is determined, of course, from the standpoint of the corporation making the distribution rather than from the standpoint of the stockholder receiving the same. The profits, of course, that the stockholder receives only become income of the stockholders when they are distributed as dividends.

This Court in *Fidelity-Bankers Trust Co. v. McCanless,* 181 Tenn. 476, 181 S.W.2d 747, reached the very

obvious and correct conclusion, we think, that a distribution from a depletion or depreciation reserve does not constitute a taxable dividend where it is a distribution of capital, but that in determining whether or not the dividend as paid out of a depreciation or depletion reserve is paid out of capital is a fact question to be determined under the facts of the case. It is also determined in this case that the bookkeeping methods of corporations are immaterial and whether or not the fund as paid out was from capital depended upon the proof of the actual condition of the corporation's assets and liabilities.

It is noted that under the statute (sec. 67-2601, T.C.A.) the definition of stocks, which we referred to above and quoted, doesn't say that they have to be stocks of any kind of corporation but it is any stocks as long as the stock certificates, in this case called "certificates of beneficial interest", were alienable. It is true that they were not freely alienable and cannot be traded on the Stock Exchange or over the board but the requirement of transferability is satisfied by the fact that the interest evidenced thereby may be sold through an intermediary to the issuing entity, M.I.T.

The State takes the position that the Court is not concerned with where the Trust got its proceeds, as we said before we do not have to follow to the source, as long as it made payments to the appellants. Whatever they were called by the Trust does not concern the taxing authorities. The only matter as far as the statute is concerned "is that complainants received certain payments on account of their ownership of shares in a business concern, and that complainants' right to such payments did not represent to complainants a return of the

capital originally invested by complainants in such shares." This is a rather plain unvarnished way to state the matter, but unless the taxing statute makes some different rule or sets forth some formula by which it shall be done it is our duty to look at it in this way.

The Massachusetts Supreme Judicial Court in *Trefry v. Putnam*, 227 Mass. 522, 116 N.E. 904, 911, L.R.A.1917F, 806, had before it a very closely related exception to that as quoted above (sec. 67-2609, T.C.A.), which read as follows, (St.1916, c. 369, sec. 2(b):

"Dividends on shares in all corporations and joint-stock companies * * No distribution of capital, whether in liquidation or otherwise, shall be taxable as income under this section; but accumulated profits shall not be regarded as capital under this provision."

In the case before the court there were certain stock dividends and since the language there used with reference to these stock dividends is so applicable to the factual situation here we will quote to some extent the reasoning of the court from this Massachusetts case. That court said:

"That which originally had been earnings in the case at bar had never been distributed as a cash dividend or in any other form. Its use had been such as to add to the value of the capital. It doubtless had increased that value prior to 1916. But the act of the corporation in 1916 was, in substance, a distribution of certificates of title to represent this increment of value with all the advantages that might flow therefrom. It was the issuance to the stockholder of a new thing of value, transferable, transmissible and salable

separate and apart from that which before he had possessed. 'Accumulated profits' as used in the statute are words of sufficiently comprehensive scope to include profit which had been earned and invested as had those here in question. The words 'accumulated profits' are used as the antithesis of 'distribution of capital.' The latter would include payment of a part of the capital investment sold and returned to the shareholders, whereby the capacity of the corporation to carry on business was impaired or depleted. * * * But the words 'distribution of capital' do not readily lend themselves to an issue of new stock, which in its last analysis represents surplus earnings of the corporation for the time being applied to increase of plant and which are intended to be continued to that use. In essence the thing which has been done is to distribute a symbol representing an accumulation of profits, which instead of being paid out in cash is invested in the business, thus augmenting its durable assets. In this aspect of the case the substance of the transaction is no different from what it would be if a cash dividend has been declared with the privilege of subscription to an equivalent amount of new shares. * * * From the viewpoint of the stockholder, he has received in the form of dividend in stcok a thing with which theretofore he could have on tangible dealings. * * * The thing of value which is taxed as income, namely the dividend in stock, did not come into his possession or right to possession until the year for which he is taxed. It is this thing of value which is taxable at the time when it comes into his right to possession.''

■ What has been quoted above very simply can be paraphrased and applied to the facts of the instant case. The appellants received stock on profits made from the sale of certain assets included in their basic stock, these assets not being depleted but being increased, thus under our taxing statute which taxes stocks this, regardless of what it is called, is a dividend on these stocks and is taxable under this Act.

As said above this statute in which the income tax is fixed in this case does not define income specifically. We must therefore consider it in the light of its ordinary everyday common sense usage, as representing gains realized in the field in which the tax operates over and above the taxpayers original investment. It seems to us that when the Legislature enacted sec. 67-2609, above quoted, and provided that no distribution of capital should be taxed they tried to amplify that by liquidation or otherwise, but when they put the exception the purpose was in include everything else above the original capital of the corporation as earned surplus and make it taxable. In our view of the matter that can be the only proper interpretation to come to upon a careful study of this Act.

Much of the reasoning of the appellants here is based upon the effect given under the general income tax law of the Federal Government, wherein capital gains distribution are set aside and not taxed. In those cases the word "income" will be frequently found and a definition given for it, but these Federal cases are not applicable here, *First National Bank v. McCanless,* supra, because the taxpayer in these Federal cases was taxed on his net income as shown by his return, while under the

Hall Income Tax Law in question here it provides for a tax upon "net income" from stocks and bonds only, and there is no authorization in the statute to deduct anything from the annual interest on bonds held by the taxpayer upon which no ad valorem tax is assessed. *First National Bank v. McCanless,* supra.

We thus go along with the interpretation placed on the words "capital" and "earned surplus" with the Massachusetts Court in *Commissioner of Corporations and Taxation v. Filoon,* 310 Mass. 374, 38 N.E.2d 693, and hold that the word "capital" as used in sec. 67-2609, T.C.A., means "invested in the corporation by the stockholder". And further we think that the interpretation put by that court on "accumulated profits" means "earned surplus" or "undivided profit" of the corporation, and represents property earned by the corporation as distinguished from property invested therein by the shareholders. 310 Mass. page 385, 38 N.E.2d page 700. And that "Such a dividend, under our decisions, is a distribution of such profits to the shareholder, constituting income of such shareholder." 310 Mass. 384, 38 N.E. 2d 700.

It is next contended that if we interpret the Hall Income Tax Law as above interpreted such an interpretation "violates Article 11, Section 8, Article 1, Section 8 and Article 2, Section 28 of the Constitution of Tennessee" because if such statute is so construed as to tax these appellants "it discriminates against them because it does not purport to tax, and no effort is made by the administrative agency to tax the capital gain realized and received by all other persons from the sale of securities owned by them for their own account; and com-

plaints contend further that Article 2, Section 28 of the Constitution, the taxing authority contained in the Charter, does not authorize the taxing of such distributions." (Page 2, Brief and Assignments of Error).

In the outset of this opinion we quoted from Article 2, Section 28 of the Constitution, which clearly to our mind authorizes the Legislature to pass an act taxing income derived from stocks and bonds. We have discussed heretofore the Section of the Act of the Legislature defining the terms "stocks" and "bonds" and which clearly is a legislative prerogative and it has been exercised by the Legislature in the statute above referred to. It seems clear to us that there is nothing unnatural or unreasonable in that definition. If the Act is not arbitrary or capricious but natural and reasonable, it is not obnoxious to any constitutional objection, either State or Federal, that we know of.

The Act in question treats, as we see it, all corporate organizations alike, such as the Massachusetts Investors Trust or any others, issuing shares evidencing the ownership of persons therein, and there was no distinction made in this Act, no one has been given a preference or priority over the other—everybody is treated alike under the terms of the Act. Clearly when this is true, there is no arbitrary nor capricious act done by the Legislature, and every person is treated the same, and it seems to us that there can be no constitutional objection to that.

As we have indicated hereinbefore, we thing that it was clearly the legislative intent in passing this Act, because there is no distinction pointed out between one or the other, that they have elected to tax income derived

from such trusts as that involved herein in the same manner that they have elected to tax income which one might have from any ordinary corporation, such as General Motors or U. S. Steel, or corporations of that kind. This being true there is no constitutional objection to it.

It was stipulated herein that the administrator of this law did not tax profits realized by an individual upon the sale of his own capital assets, nor upon such income when it was realized from a trust, unless the trust meets the requirement of interest therein represented by the transferable interest thereof. This Act under which the tax herein is laid, hereinbefore set forth, does not contain any such distinction as to make the appellants herein taxable while those owning stock are themselves non-taxable. The Act taxes all alike. Insofar as it is pointed out to us, and as we can find, there is no statutory law in this State for the taxation of profits realized by an individual upon the sale of his own capital assets, nor is there a provision for the taxation of such income when realized by a trust, unless the trust meets the requirements that interest thereon be represented by transferable evidence thereof as hereinabove pointed out. The Legislature possesses the power to tax income from stocks and bonds. Whether or not it has the power to tax what is called herein "capital gains" to individuals is another question. Insofar as we can see and for the reasons hereinbefore set forth we think that what are known as "capital gains" herein really amount to income and are taxable under this law. By this Act the Legislature has chosen to tax dividends and to do so without regard to their source and without requiring

any run down back to the point where these things came from.

Nobody forced the appellants or those standing in like position to invest in the type of stocks and bonds that are taxable under the Act. If the individuals had wanted to they had a perfect right, we assume, under this record to invest in things on their own or to create trusts to comply with the law and thus they would not be taxable, but merely the passing of an Act taxing certain things within itself does not bring the Act in contravention of the various Sections of the Constitution hereinbefore cited. The Legislature is not required when it enacts a taxing statute to make absolutely sure that it will affect everyone in precisely the same manner. The Legislature may impose a tax upon corporations but is not compelled to impose a like tax upon partnerships or individuals. The Legislature is not required in taxing income from corporate stocks to impose a like tax upon interests of partnerships or trusts. The Legislature, as long as what it does is not arbitrary or capricious, but is natural and reasonable, may classify for taxation things in any reasonable manner in which it sees fit, and such classification will not be interfered with by the courts if such a tax can be considered reasonable as between various classes.

We think that the Act herein is reasonable, and there is no unreasonable classification by this taxing statute because of its alleged unfavorable impact upon the parties herein as shareholders in this Trust, because of the very obvious differences between one investing his own things and one turning his money over to a Trust

of the kind. We do not think that it violates the constitutional prohibition against class legislation.

For reasons above set forth, the decree of the Chancellor must be affirmed.

WHITE, JUSTICE, not participating.